## HARRY A. BROOKS v. HENRY A. HYDORN.

*Constitutional law — Title of act — Justices of the peace of Grand Rapids.*

| 76 | 273 |
| 78 | 564 |
| 76 | 273 |
| 113 | 591 |
| 76 | 273 |
| 141 | 442 |
| 76 | 273 |
| 150 ¹ | 5 |

1. Act No. 200, Laws of 1889, which assumes to reduce the number of justices of the peace in the city of Grand Rapids to two, and to legislate two of such officers out of office, is unconstitutional, the title failing to indicate any such object, which is the main purpose of the act, to which all else is secondary.

2. The title to a legislative act is no part of the bill, and cannot *alone* repeal an existing law.

*Mandamus.* Submitted July 9, 1889. Denied July 11, 1889.

Relator applies for a *mandamus* to compel respondent to deliver the files, records, and docket belonging to his office, as a justice of the peace of the city of Grand Rapids, to another justice, as provided by Act No. 200, Laws of 1889.

The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Reuben Hatch,* for relator.

*McGarry & Ford,* for respondent.

MORSE, J. The Legislature at its last session passed an act which sought to abolish the office of two justices of the peace in the city of Grand Rapids. The respondent is one of the persons thus attempted to be legislated out of office.

This act provided, among other things, that the files, records, and docket belonging to respondent's office, from and after the fourth day of July, 1889, should be filed with the justice of the peace whose term of office should soonest expire by its own limitation. Such justice, it is admitted, is Thomas Walsh.

The relator, Harry A. Brooks, shows that on the seventh day of May, 1889, he recovered a judgment in an action of *assumpsit* before the respondent against one James Gibbs, for $100 damages and $5 costs, which judgment is unsatisfied; and this is admitted.

Brooks, being entitled to an execution on said judgment, and desiring to have the same issued, requested the said respondent on the fifth day of July, 1889, to deliver to the said justice, Thomas Walsh, the files, records, and docket belonging to respondent's said office of justice of the peace, as required by the provisions of said act of the Legislature, in order that the relator might have an execution issued by the said Thomas Walsh for the collection of his said judgment.

The respondent refused to comply with said request, and declared that he would not deliver such records and docket, but should retain the same, and continue to hold his office, claiming that the same was not discontinued or abolished by said act of the Legislature.

The relator asks that the writ of *mandamus* issue from this Court to compel such delivery, and, in effect, a vacation of said respondent's office.

The act has not been authoritatively published, but we have been furnished with a certified copy of the same from the office of the Secretary of State, and the importance of the question is such that it demands a speedy decision.

Hydorn was elected a justice of the peace in and for the city of Grand Rapids to fill a vacancy at the last spring election in April, 1889, and entered at once upon the discharge of the duties of his office. The term of his office to which he was elected does not expire until the fourth day of July, 1892, unless his office is abolished by this act of the Legislature.

At the time the act was passed, taking immediate effect, there were four justices of the peace in the city of Grand Rapids duly elected and qualified, and performing the duties of their offices. They were in office under the law of 1881 (Pub. Acts of 1881, p. 20), although it is not disputed that the city of Grand Rapids has had at least four justices of the peace ever since such city was organized.

The law makes a radical change, and legislates, if valid, not only Hydorn, but another justice, Hughes, out of office. The respondent contends that this act of the Legislature is unconstitutional and void, and that the old law remains.

A justice of the peace is a constitutional officer and an elective one, and it is claimed that there must be four in each township, and at least as many as that number in the cities, of this State.

Section 17, Art. 6, of the Constitution reads as follows:

"There shall be not exceeding four justices of the peace in each organized township. They shall be elected by the electors of the townships, and shall hold their offices for four years, and until their successors are elected and qualified. At the first election in any township, they shall be classified as shall be prescribed by law. A justice elected to fill a

vacancy shall hold his office for the residue of the unexpired term. *The Legislature may increase the number of justices in cities.*"

There has always been, under the Constitution, four justices provided by law for each township, and the term of years of the office, and the provision for classification of the terms at the first election, tend to support the theory that it was intended by the Constitution that there should be four justices in each township; and, if that were so, the clause in relation to the number in cities would, in its language, by granting the power of increase to the Legislature, impliedly withhold the authority to decrease.

But the Constitution strictly, by its terms, does not provide that there must be four justices in a township, but that there shall be justices not exceeding four in number. Constitutions are, especially in examining and determining the restrictions placed upon legislatures by those instruments, strictly construed, and such a construction would permit the Legislature to enact that there should be but two justices in a township, and, if so, but two in a city.

It is also contended that the Legislature has no power to abolish or shorten the term of the office of a justice of the peace after such officer has been elected and qualified. The Constitution provides that they shall hold their offices for four years, and that a justice elected to fill a vacancy, as was the respondent, shall hold his office for the residue of his unexpired term. It is insisted in respondent's behalf that these provisions expressly prohibit the Legislature from interfering with or abolishing his term of office; that even if it be conceded that the power exists in that body to change the number of justices in Grand Rapids from four to two, still the Legislature has no authority to determine that the respondent's term shall end before the period of its determination as the law existed when he was elected and qualified.

We do not, in the view we take of this act, consider it

necessary to determine whether or not the Legislature can decrease the number of justices in Grand Rapids to two, or whether, in case this could be done, the term of respondent could be shortened or abolished.

It is also objected that the act is void because it conflicts in two particulars with section 20, Art. 4, of the Constitution,—

1. Because there is more than one object expressed in the title.

2. Because the title does not indicate the object of the act as expressed in the body of it.

The title reads as follows:

" An act to provide for the election of two justices of the peace, and for the appointment of a justice clerk and room for holding justice court, in and for the city of Grand Rapids, and to define their jurisdiction, and to fix their compensation, and to repeal an act entitled ' An act to provide for the election of four justices of the peace in and for the city of Grand Rapids, and to define their jurisdiction, and fix their compensation,' approved March 11, 1881, and all acts and parts of acts in anywise contravening to the provisions of this act."

We think the first objection not a good one. There is really but one object,—the formation of a justice's court, and the providing of a clerk to the court, and a room in which to hold it. The defining of the jurisdiction of the justices, and fixing their compensation, belong also to the same general object.

But the second objection is well taken. The title of the act does not indicate that any offices are to be abolished, unless it be in that portion of it which relates to the repeal of the act of 1881. Of this we will speak hereafter.

It certainly does not bear, on its face, any idea of legislating two justices out of office before the expiration of the terms for which they were elected and have qualified. A bill providing for the election of two justices, and the appointment of a justice's clerk, is a very different thing from a bill

continuing two certain justices in office, and providing that the others shall go out of office on the fourth day of July, 1889, and turn all the files and records of their offices and their dockets to two others, which is the real purpose, object, and effect of the body of this act.

No one, in reading the title of this act while it was a bill before the Legislature, would have been apprised that the offices of respondent and Justice Hughes were not only to be abolished, but that they were to be deprived of holding the same after the fourth day of July, 1889. If one can gather from the clause in the title in relation to the repeal of the act of 1881, which provided for four justices, that the intention and purport of the bill might be to decrease the number of justices from four to two, yet there is not the slightest hint therein that any of the justices already in office should be deprived of their terms, or, if so, which one, or two, of them was thus to be legislated out of office. The notice in the title, which the Constitution imperatively requires, was therefore not given, and the plain purpose of the constitutional mandate evaded and violated.

This purpose of the constitutional direction, which has been disregarded in this act, is that the intent of the bill—its object—shall be clearly shown by its title, for the benefit, not only of the members of the Legislature who are to vote upon it, but also for the benefit of the people of the State outside of the Legislature, who are interested, and have a right to be, in all legislation, whether the same be general or special. *Attorney General v. Rice,* 64 Mich. 385 (31 N. W. Rep. 203).

This act comes clearly within the numerous decisions of this Court; in fact, so many of them, and some so recent, that it is useless to here cite them, as they are not only well known to the profession, but to the people generally.

This act being unconstitutional in the respect above noted, it remains to be seen whether, after the elimination of the

objectionable features of this act, there is anything left of it that can be supported and maintained.

We think not, and that the whole act is void. The main purpose of it was to reduce the justices from four to two, and to legislate the respondent and Hughes out of office. All else is secondary and incident to this primal object, as heretofore shown.

This act shows evidence of hasty and ill-considered legislation. Not only is the title foreign to the purposes of the act, but some of the sections are not intelligible, if the copy furnished us is a correct transcript of the act as passed, and approved by the Governor

The first section provides that there shall be two justices, who shall be elected—

" At the regular charter election of said city, or at the general election held in the said city, in the same manner * * * as justices of the peace [for] of townships,—"

And shall hold the office for the same term, except that the office of the justice whose term expires on the fourth day of July, 1889, as well as his successor, and the office of the one whose term expires July 4, 1892, and of his successor as well, shall be abolished, and that the other two shall hold for the balance of their unexpired terms.

Section 2 provides that two justices shall be elected—

" At the regular charter election of said city, *or at any general* election held therein, in the same manner * * * as justices of the peace for townships, and the files, records, and dockets belonging or appertaining to those offices of justices of the peace *abolished by the act which this act repeals* shall belong to and be filed and safely kept in the clerk's office hereinafter mentioned."

It also provides that the justices of the peace, whose terms of office are not abolished by this act, shall succeed themselves, if the English language is considered to have its ordinary meaning. Here is the provision:

"The justice of the peace whose term of office shall first expire * * * under this act herein provided for, shall be elected at the general election to be held in the spring of 1890, and shall *at once* thereafter assume the duties of his office, the same as though he were elected *to fill a vacancy*, and his term of office shall expire on the fourth day of July, 1894, and thereafter *his successors* shall be elected for the term of four years, as provided by the general statute."

The same provision is made in nearly the same language in reference to the other justice remaining in office under this act, except that he shall be elected at the general election to be held in the spring of 1891.

If these provisions do not mean as they read, that the justices now in office shall be re-elected in the spring before the July in which their terms, now being holden, expire, then they are unconstitutional, because they provide for the election of a justice of the peace in each case whose term shall extend beyond the constitutional limit of four years, to wit, four years, and also the intervening time in addition from the date of the spring election to the fourth day of July following such election, and also shorten the term of the two justices now in office, and whose offices are retained by this act, from the time of the spring election to the fourth of July in the same year.

Other crudities and imperfections in the act might be noticed if we had time and inclination to do so.

But there is one other defect or omission in the body of the act worthy of attention.

There is no provision in the act itself for the repeal of the act of 1881, or for the repeal of any act or acts inconsistent with the act under consideration. As the title of the bill is no part of the bill itself, and is adopted by the Legislature after the bill is passed, it can hardly be said to have any enacting power of its own. It becomes an essential part of the law after the passage of the act, but it is a statement or

index of the law as contained in the body of the act, rather than an exposition of the law itself. *Attorney General v. Rice*, 64 Mich. 385 (31 N. W. Rep. 203); *Larrison v. P., A. & D. R. R. Co.*, 77 Ill. 17.

The title alone cannot serve as a repeal of the act of 1881, and, as there is no section or clause repealing the same found in the body of the act, it is not repealed except by implication. If the act under consideration were a valid one, it would no doubt repeal by implication such parts of the act of 1881 as would be found to be antagonistic to, or inconsistent with, this act, but this would be the effect without regard to the title.

We are of the opinion that no part of the act before us can stand, and that the whole of the same is invalid, and that the law of 1881 is in full force and effect, the same as if this act had not been passed.

The application for *mandamus* is therefore denied, with costs against the relator in favor of respondent.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred.