TOWNSHIP OF MUSKEGON v. CONTINENTAL MOTORS CORPORATION.

1. Taxation—Lessee of Tax-Exempt Property—Business for Profit.

Statute providing for the taxation of lessees and users of tax-exempt property where a business is conducted for profit thereon does not discriminate against such lessees or users because of such tax by reason of inability to collect the tax from the landlord, since they are but sharing the cost of supporting government (CLS 1954, §§ 211.181, 211.182).

2. Constitutional Law—Equal Protection of Law.

The equal protection clause affords immunity from inequality of legal protection, either for life, liberty or property (US Const, Am 14).

---

References for Points in Headnotes

[1, 3, 4] 51 Am Jur, Taxation §§ 238, 535.
[1, 3, 4] Leasehold estate in exempt property as subject of tax or special assessment. 23 ALR 248.
[2, 3] 12 Am Jur, Constitutional Law § 469; 51 Am Jur, Taxation § 168.
[5] Generally, 51 Am Jur, Taxation § 984.

3. TAXATION—LESSEE OF TAX-EXEMPT PROPERTY—BUSINESS FOR PROFIT—DISCRIMINATION.

The statutory imposition of a tax upon lessees or users of tax-exempt property conducting a business thereon for profit does not discriminate against such users but does operate to prevent discrimination in their favor (US Const, Am 14; CLS 1954, §§ 211.181, 211.182).

4. UNITED STATES—TAX-EXEMPT PROPERTY—SOVEREIGN IMMUNITY—TAXATION OF LESSEE—BUSINESS FOR PROFIT.

The sovereign immunity of the United States from taxation is not involved in a common-law action by a county, township and school district to recover taxes from the lessee of property owned by the United States and upon which lessee was conducting a business for profit, which taxes were levied pursuant to authority conferred by State statute and judgment would be satisfied by the lessee and not by the United States (CLS 1954, §§ 211.181, 211.182).

5. COSTS—LESSEE OF TAX-EXEMPT PROPERTY—UNITED STATES—ACTION FOR TAXES.

Costs are allowed against lessee of property only, where judgment against it for taxes by local units of government is affirmed and no liability is sought to be interposed upon the United States, owner of the property (CLS 1954, §§ 211.181, 211.182).

Appeal from Muskegon; Smith (Raymond L.), J., presiding. Submitted April 4, 1956. (Docket No. 19, Calendar No. 46,679.) Decided June 28, 1956. Probable jurisdiction of Supreme Court of the United States noted January 14, 1957.

Action by Township of Muskegon, County of Muskegon and Orchard View Rural Agricultural School District No. 5, Muskegon Township, all municipal corporations, against Continental Motors Corporation, a Virginia corporation, for taxes levied on use of leased property. United States of America intervenes as party defendant. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Charles A. Larnard,* for plaintiff Muskegon Township.

*Robert A. Cavanaugh,* for plaintiff Muskegon County.

*Street & Sorensen (Harold M. Street,* of counsel), for plaintiff Orchard View School District.

*Butzel, Eaman, Long, Gust & Kennedy (Victor W. Klein* and *Clifford W. Van Blarcom,* of counsel) and *Joseph T. Riley,* for defendant.

*Charles K. Rice,* Acting Assistant Attorney General, *Lee A. Jackson, Hilbert P. Zarky,* and *Lyle M. Turner,* Attorneys, Department of Justice, *Wendell A. Miles,* United States Attorney, and *Robert J. Danhof,* Assistant United States Attorney, for intervening defendant.

BLACK, J. This case is a direct descendant of *Continental Motors Corporation* v. *Township of Muskegon, ante,* 141. It marks the second and separate effort of a corporation hailing from Virginia and doing business for profit in Muskegon township to find legal means of transferring its more than substantial share of the cost of local government to the shoulders of local payers of property taxes.

The property known in the records of both cases as Plancor 166 was deeded May 6, 1953 by RFC to the United States with result that on the next ensuing tax day (January 1, 1954) Plancor 166 concededly became and remained exempt from taxation. The fact of such conveyance was noted in the cited case at page 146 of the report and it with this suit transfers judicial attention from determination of validity of property taxes levied against Plancor 166, when title thereto stood in the name of RFC, to question

whether the plaintiff taxing authorities lawfully assessed Continental, as continuing lessee for profit of Plancor 166 after title thereto passed to the United States, pursuant to PA 1953, No 189.*

Turning now to Continental's status under said Act No 189 in conjunction with the present suit: The supplemental agreement, by which Continental continued to use and occupy Plancor 166 following transfer of title to the United States, contains this self-explanatory covenant:

"6. The contractor† shall pay to the properly-constituted authority or authorities as and when the same may become due and payable all taxes, assessments, excises and similar charges which may be lawfully taxed, assessed or imposed upon the contractor with respect to or upon Plancor 166 or any part thereof, provided, however, that such taxes, assessments, excises or similar charges shall be pro-rated and apportioned as of the date of this agreement and as of the date of determination thereof respectively. Nothing herein contained, however, shall prohibit the contractor from contesting in good faith the validity of any such taxes or assessments."

The 1954 assessment having been levied against Continental under said Act No 189 in the total sum of $84,051.76, and Continental having refused to pay, this suit to recover the levy followed. Trial to the court, Honorable Raymond L. Smith, circuit judge presiding, resulted in judgment for the plaintiff local units in accordance with their declaration and the present appeal by Continental to this Court. The substantial questions before us are stated by Continental as follows:

---

* CLS 1954, §§ 211.181, 211.182 (Stat Ann 1955 Cum Supp §§ 7.7 [5], 7.7[6]). The title clearly indicates the legislative purpose. It reads: "An act to provide for the taxation of lessees and users of tax-exempt property."

† Continental is the "contractor."

"1. Does PA 1953, No 189 impose an ad valorem property tax or a privilege tax?

"2. Is PA 1953, No 189 invalid because it attempts to impose an ad valorem tax upon real property which was owned by the United States, was used solely for its benefit and was otherwise immune from local ad valorem taxation by the mere device of stating that it was taxing the lessees or users thereof in the same amount and to the same extent as though such lessee or user was the owner of such property and thus attempts to defeat the impact of Federal constitutional immunity?      *      *      *

"4. Even if PA 1953, No 189 imposes a privilege tax is it invalid as a privilege tax because it is discriminatory in purpose and effect, and is primarily directed at Federally-owned property and designed to subject to State taxation property which is constitutionally immune from such taxation?"

Stated questions 1 and 2 were firmly resolved against Continental's contention in *United States* v. *City of Detroit,* 345 Mich 601, and it is unnecessary to repeat what was said of such issues on that occasion. Stated question 4, dealing with alleged invidious discrimination against lessees of tax-exempt property engaged as the statute says in "business conducted for profit," deserves and will receive consideration.

Continental's counsel say, in support of question 4:

"It should also be noted that those subject to the act are obliged to pay a tax which they cannot collect from the owner. No remedy has been provided for that purpose and any remedy, if it had been provided, would be ineffective against the sovereign rights of the United States. On the other hand, lessees of the vast bulk of the real property in this State, if they are taxed at all under CL 1948, § 211.3 (Stat Ann 1950 Rev § 7.3), are given an effective remedy to collect such taxes from the owner of such realty (CL 1948, § 211.53 [Stat Ann 1950 Rev

§ 7.97]). Thus, those few subject to PA 1953, No
189, who use Federally-owned tax-immune realty,
find themselves carrying a burden not imposed upon
any other lessee or·user of real property in this
State. This too constitutes an unlawful discrimina-
tion against those engaged in the use of Federally-
owned real property."

The contention is without merit. Indeed, when it
is searchingly examined in light of the companion
records that are before us, we should, in my view,
conclude that the legislature by PA 1953, No 189
has wisely effectuated its continuing duty of provid-
ing equal burdens and equal privileges for those of
corresponding or similar situation. Without Act No
189 a lessee or user for profit of federally-owned tax-
immune realty becomes specially privileged and
notably favored over his local classmates, and I re-
fer to that class which directly shares the burdens as
well as the benefits of local government. As counsel
for plaintiffs say:

"When a large and valuable piece of property
(Cost, $8,352,768.30) which is tax exempt, is turned
over, *rent free*, to a 'private individual, association
or corporation' for use 'in connection with a business
conducted for profit,' it is quite obvious that the one
having the use of such property has a valuable privi-
lege. The one having the use of such property en-
joys the benefits of police protection, fire protection,
roads, schools for the children of his employees and
the other benefits of local government."

Counsel conclude with observation that one enjoy-
ing such a privilege should, as a matter of justice,
be required to contribute to the support of his or its
local units of government. While they do not elab-
orate further, I think we should record *sua sponte*
some of the facts proving dire and present accuracy
of their representations in the field of education—a
field corporations like Continental eagerly reap when

the crops thereof ripen in our engineering schools. June 23, 1952 the plaintiff school district voted to issue bonds in the sum of $385,000 "for the purpose of erecting and furnishing an addition to the existing new school building in said district." The electors simultaneously provided 6 mills in accordance with constitutional practice to support the issue. The bonds could not be sold. The reason is disclosed, this way, in a subsequent (December 30,1952) resolution adopted by the board of education:

"Whereas, no bids were submitted for the purchase of the said bonds because of uncertainty expressed by the prospective purchasers relative to the present and future liability for taxes of the Continental Aviation and Engineering Corporation plant* located in the said school district, which plant, consisting of the land and buildings thereon, constituted some 52.79% of the total assessed valuation of the entire school district."

In these circumstances of necessity the property taxpayers and electors of the district were compelled at later special election to vote an additional 8 mills, making 14 mills in all extending from 1953 through 1971, to render the bonds salable. When judges consider, as the court did in *Brown* v. *Board of Education of Topeka,* 347 US 483 (74 S Ct 686, 98 L ed 873),† that (p 493) "Today, education is perhaps the most important function of State and local governments," we arrive at special understanding of legislative purposes in the conception and enactment of Act No 189. It simply forces lessees and users for profit of tax-exempt lands to shoulder with others of the class the burdens that are attendant upon benefits all of the class receive.

The *Slaughter-House Cases,* 16 Wall (83 US) 36, 67–72 (21 L ed 394, 405–407) and *Strauder* v. *West*

---

* This is Plancor 166.

†.This is the first of the so-called segregation cases. ·

·*Virginia,* 100 US 303, 307, 308 (25 L ed 664, 666) were quoted with approval in the *Brown Case* and, while not directly in point so far as Act No 189 is concerned, the fact of such quotation is worthy of present consideration in that it brings to clearly focused light, again in this century, a predicative purpose of the 14th Amendment that has always accompanied its prohibitory words—that of firm implication of right to positive immunity from legal discrimination. The implication thus becomes a continuing if unenforceable admonition to legislative assemblies of the several States that affirmative vigilance against and enactments preventive of inequality of legal protection are quite in order whenever such inequality exists or threatens. As the court said in *Strauder* (p 310):

"The 14th Amendment makes no attempt to enumerate the rights it designed to protect. It speaks in general terms, and those are as comprehensive as possible. Its language is prohibitory; but every prohibition implies the existence of rights and immunities, prominent among which is an immunity from inequality of legal protection, either for life, liberty or property."

Legislation designed toward equality in the sharing of burdens and benefits of local government is reverence for, rather than offense to, our traditional right to equal protection of the laws. Act No 189 is such legislation. It does not discriminate against lessees for profit of exempt property and commendably operates to prevent shocking discrimination in their favor. We accordingly hold as against this latest challenge that Act No 189 is valid and that the circuit judge was right in entering judgment for the plaintiff local units by force thereof.

The presence of the United States as an intervening party is noted. The Government and its brief are welcome but do not distract from duty of deter-

mination whether the named defendant should or should not be judged liable to plaintiffs on account of the matters alleged in the declaration we have before us. This is a common-law action brought by plaintiff units of local government. The declaration names a private corporation only as defendant. In the absence of congressional action the judgment of the court below, when and if paid, will be retired exclusively by the private defendant and not by the United States. No judgment has been entered against the United States, directly or indirectly. No tax was or is levied against its property and sovereign immunity of the United States from taxation and suit is not involved.

The judgment of the circuit court should be affirmed, with costs to plaintiffs assessed against Continental only .

SHARPE, SMITH, BOYLES, and KELLY, JJ., concurred with BLACK, J.

DETHMERS, C. J., and CARR, J., concurred in the result.

EDWARDS, J., took no part in the decision of this case.