## UNITED STATES v. TOWNSHIP OF MUSKEGON ET AL.

No. 37.  Argued November 14, 1957.—Decided March 3, 1958.*

*Roger Fisher* argued the cause and was on a reply brief for the United States, appellant in No. 37.  Also on a brief were *Solicitor General Rankin, Acting Assistant Attorney General Stull, A. F. Prescott* and *H. Eugene Heine, Jr.* for the United States, and *Victor W. Klein,* who submitted on the brief for the Continental Motors Corporation, appellant in No. 38.

*Harold M. Street* argued the causes for appellees.  On the brief were *Charles A. Larnard* for the Township of

---

*Together with No. 38, *Continental Motors Corp.* v. *Township of Muskegon et al.,* also on appeal from the same Court.

Muskegon, Michigan, *Robert A. Cavanaugh* and *William P. Spaniola* for the County of Muskegon, Michigan, and *Mr. Street* for the Orchard View School District, appellees.

*Keith L. Seegmiller* filed a brief for the National Association of County Officials, as *amicus curiae*.

MR. JUSTICE BLACK delivered the opinion of the Court.

As the Government points out in its jurisdictional statement "this appeal presents precisely the same basic question" as is raised in No. 26, *United States* v. *City of Detroit, ante,* p. 466, also decided today. That question is whether Public Act 189, of 1953, of the State of Michigan is unconstitutional as applied to a corporation using government property in connection with a business conducted for its own private gain.

In this case the United States owns a manufacturing plant at Muskegon, Michigan. In 1952 it granted Continental Motors Corporation the right to use this plant in the course of performing several supply contracts Continental had with the Government. No rent was charged as such but Continental agreed not to include any part of the cost of the facilities furnished by the Government in the price of the goods supplied under the contracts.

On January 1, 1954, Continental was assessed a tax under Public Act 189. As in No. 26, this tax was levied because of Continental's use of tax-exempt property in its private business and was measured by the value of the exempt property which it was then using. Continental refused to pay the tax and this suit was brought by state authorities in a state court to recover the amount assessed. The United States intervened, contending that the tax was invalid because it imposed a levy on government property. But the lower court rejected this contention and entered judgment for the plaintiffs. The Michigan Supreme Court affirmed, 346 Mich. 218, 77

N. W. 2d 799. We noted probable jurisdiction of an appeal from this decision by both Continental and the United States, 352 U. S. 963, and now affirm the judgment below on the basis of our decision in No. 26.

There are only two factual differences between this case and No. 26. First, Continental is not using the property under a formal lease but under a "permit"; second, Continental is using the property in the performance of its contracts with the Government. We do not believe that either fact compels a different result.

Constitutional immunity from state taxation does not rest on such insubstantial formalities as whether the party using government property is formally designated a "lessee." Otherwise immunity could be conferred by a simple stroke of the draftsman's pen. The vital thing under the Michigan statute, and we think permissibly so, is that Continental was using the property in connection with its own commercial activities. The case might well be different if the Government had reserved such control over the activities and financial gain of Continental that it could properly be called a "servant" of the United States in agency terms. But here Continental was not so assimilated by the Government as to become one of its constituent parts. It was free within broad limits to use the property as it thought advantageous and convenient in performing its contracts and maximizing its profits from them.

If under certain conditions the State can tax Continental for use of government property in connection with its business conducted for profit—and as set forth in No. 26 we are of the opinion that it can—the fact that Continental was carrying out a contract with the Government does not materially alter the case. Continental was still acting as a private enterprise selling goods to the United States. In a certain loose way it might be called an "instrumentality" of the United States, but no

more so than any other private party supplying goods for his own gain to the Government. In a number of cases this Court has upheld state taxes on the activities of contractors performing services for the United States even though they were closely supervised in performing these functions by the Government. See, *e. g., James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Alabama* v. *King & Boozer,* 314 U. S. 1; *Curry* v. *United States,* 314 U. S. 14; *Wilson* v. *Cook,* 327 U. S. 474.

The *Curry* case seems squarely in point. There a contractor acting pursuant to a cost-plus contract with the United States purchased certain materials. These materials were shipped to a government construction project where they were used by the contractor in the performance of the contract. By agreement title to the materials passed to the Government as soon as they were shipped by the vendor. The State imposed a tax on the contractor, based on the value of the materials, for using them after they had been delivered to the work site. This Court unanimously upheld that state use tax, although it clearly amounted to a tax on the use of government property in performing a government contract.

*Affirmed.*

[For opinion of MR. JUSTICE FRANKFURTER, see *post,* p. 495.]

[For opinion of MR. JUSTICE HARLAN, see *post,* p. 505.]

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE BURTON joins, dissenting.

Though the tax involved in these appeals rests upon the same Michigan statute and generally the same legal principles as No. 26, *United States* v. *City of Detroit,* 355 U. S. 466, also decided today, the facts are sufficiently

different to render this tax even more clearly unconstitutional than the one there sustained.

Here the Government did not even lease nor rent its plant. It simply entered into a contract with Continental providing that the latter would produce certain military supplies at a price equal to its cost, plus a fixed fee; that the work would be done in the Government's plant which was to be furnished without rent (and also that the Government would furnish certain other facilities, and might furnish certain materials, required to produce the supplies) and that Continental would not include in its "cost" for the supplies any charge for the plant and other facilities and materials furnished by the Government.

Continental, thus, had no leasehold estate, tenancy, or other property interest in the plant; and the right to use the plant belonged to and was provided by the Government as a part of the facilities which, under the contract, it was to furnish for production of the supplies. It thus seems plain to us that the Government itself was actually using its plant in the full and only sense that the "Government," being an abstraction, can ever use its military plants. *United States* v. *Allegheny County*, 322 U. S. 174, 187–188. Therefore, Continental not only had no estate in this real estate to be taxed, but, moreover, it had no independent right of use of the Government's plant to be subjected to a use tax. We think it must follow, even under the majority's interpretation of the law—which we believe to be erroneous—that the tax here imposed by the State, however it may be viewed, is a direct tax against the Government and is, hence, invalid.

For these reasons and also those stated in my dissenting opinion in No. 26, as well as those stated in my dissenting opinion in Nos. 18 and 36, *City of Detroit* v. *Murray Corporation*, 355 U. S. 489, also decided today, I dissent, and would reverse the decision and judgment below.