CONTINENTAL MOTORS CORPORATION *v.* TOWNSHIP OF MUSKEGON.

DECISION OF THE COURT.

1. TAXATION—PROPERTY OF UNITED STATES.

The property of the United States is constitutionally immune from direct taxation by the States (US Const, Art 1, §§ 2, 8, 9).

2. SAME—POSSESSORY INTEREST—EXCISE TAX.

A tax upon the possessory interest in another's tax-exempt property when used in a business conducted for profit is a specific or excise tax upon the privilege of possession and use and not an ad valorem tax on the property itself notwithstanding the statutory measure of the tax is the cash value of the property (CLS 1961, § 211.14).

3. SAME—EXCISE TAX.

An excise tax is a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.

4. STATUTES—TITLE OF ACT.

The title of a legislative act must give notice to legislators and others interested of the object of the law thereby assuring them that only matters germane to the object expressed in the title will be enacted into law (Const 1908, art 5, § 21).

5. TAXATION—TITLE OF GENERAL PROPERTY TAX ACT—EXCISE TAXES.

Title of the general property tax law providing "for the assessment of property and the levy and collection of taxes thereon"

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation § 218 *et seq.*
[2, 3, 5, 6, 15] 51 Am Jur, Taxation §§ 33 *et seq.*, 83.
[4] 50 Am Jur, Statutes § 160.
[7, 8] 51 Am Jur, Taxation § 1189.
[9, 13, 14, 16–19] 51 Am Jur, Taxation § 419.
[10–12] 42 Am Jur, Property §§ 2, 3.
[20–22] 50 Am Jur, Statutes §§ 170, 195, 357.

is not sufficiently broad to include an excise tax on possessory rights to use another's tax-exempt property (CL 1948, § 211.14, as amended by PA 1959, No 266).

6. SAME—AD VALOREM TAX—EXCISE TAX.

A basic distinction between an ad valorem property tax and an excise tax is that the former is regarded as primarily *in rem* in nature while the latter is regarded as *in personam.*

7. SAME—PAYMENT UNDER PROTEST—INTEREST.

Taxpayer who paid tax under protest that had been levied illegally under the general property tax law is entitled to recover the taxes and collection fee so paid under protest together with interest thereon as provided by law (CL 1948, § 438.7).

8. COSTS—VALIDITY OF AMENDATORY STATUTE.

No costs are taxable in action to recover taxes paid under protest, where constitutional question respecting validity of statute amending the general property tax act is involved (CL 1948, § 211.14, as amended by PA 1959, No 266).

DISSENTING OPINION.

T. M. KAVANAGH, C. J., and SMITH and ADAMS, JJ.

9. TAXATION—PERSONAL PROPERTY—RIGHT TO USE.

*General property tax law amendment deeming personal property used in connection with a business conducted for profit to be the property of the person using it imposes a tax upon the right to use such personal property, not the use of such property, hence, is a tax on property (CL 1948, § 211.14, as amended by PA 1959, No 266).*

10. PROPERTY—DEFINITION.

Property, *as the term is commonly used, denotes an entire object, and in its legal sense, is broken down into various attributes such as the right to use, right to mortgage, right to lease, and others; a bundle of rights being involved in ownership, and the rights are property.*

11. SAME—RIGHTS.

*The term* property *has no significance except as it is utilized in the manner which the various rights therein describe.*

12. SAME—RIGHTS.

*Property is not an indivisible entity but rather an aggregate or bundle of rights and powers, and anyone having any of such rights and powers should properly be considered an owner of property.*

13. TAXATION—TAX-EXEMPT PERSONALTY—POSSESSION.

*A tax imposed upon tax-exempt personal property in the possession of one who has acquired the right to use it by paying*

*something of value for such right is a tax on a possessor's interest, the law finding ownership in the right to use (CL 1948, § 211.14, as amended by PA 1959, No 266).*

14. SAME—POSSESSION OF TAX-EXEMPT PERSONALTY—TITLE OF GENERAL PROPERTY TAX ACT.

*Imposition of tax on tax-exempt personalty in the possession of one who has acquired the right to use it by paying something of value for such right attaches the tax to the person who has the beneficial use and enjoyment of the property, hence, was properly made a part of the general property tax act by way of amendment of that act, since it provides for the ad valorem assessment of such personalty, lending fulfillment to the object expressed in the title of the act (CL 1948, § 211.14, as amended by PA 1959, No 266).*

15. SAME—DISTINCTION BETWEEN EXCISE AND PROPERTY TAX.

*An excise tax, ordinarily imposed directly by the legislature without assessment, and measured by amount of business done or extent to which conferred privileges have been enjoyed or exercised by the taxpayer irrespective of the taxpayer's assets, is, by such method of fixing the amount, distinguished from a property tax which is computed upon a valuation of the property even though privileges may be included in the valuation.*

16. SAME—TAX ON USE—TAX ON POSSESSION—CONSTITUTIONAL IMMUNITY.

*There is no essential difference, so far as constitutional tax immunity is concerned, between taxing a private person for using property he possesses and taxing him for possessing property he uses when in both instances he uses the property for his own private ends.*

17. SAME—INDUSTRIAL GOODS—POSSESSION.

*The single and most important incident of ownership of industrial goods, such as machinery and equipment, is possession and the right to use them in a business conducted for profit, a right that is coextensive with other forms of ownership insofar as it concerns uniformity of taxation thereof for a 1-year-period (CL 1948, § 211.14, as amended by PA 1959, No 266).*

18. SAME—POSSESSION OF TAX-EXEMPT PERSONALTY—TERMINATION BY OWNER.

*Fact that United States could terminate possession and use at will of tax-exempt machinery and equipment for which such possession and use plaintiff had paid something of value and thereby deprive plaintiff of the full benefit of its possessory interest perhaps shortly after tax day is but a hazard of termination common to others in various forms and does not*

effect a legal disadvantage (CL 1948, § 211.14, as amended by
PA 1959, No 266).

19. SAME—POSSESSION OF TAX-EXEMPT PERSONALTY.
Possession of tax-exempt machinery and equipment which was
assessed under property tax law in uniformity with all other
property held, not unreasonable, where taxpayer was possessed
of the complete beneficial enjoyment of the property and
deemed owner for tax purposes (CL 1948, § 211.14, as amended
by PA 1959, No 266).

20. STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW.
Legislation should be saved from unconstitutionality whenever
possible by reasonable and permissible interpretation.

21. SAME—PRESUMPTIONS.
Every possible presumption not clearly inconsistent with the
language and subject matter is to be made in favor of the
constitutionality of legislation.

22. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES—PRESUMPTIONS.
Statutes will be presumed constitutional where they may be con-
strued in either of two ways, one of which is consistent with
constitutionality.

Appeal from Muskegon; Beers (Henry L.), J.
Submitted November 4, 1964.   (Calendar No. 50,
Docket No. 50,506.)   Decided July 13, 1965.   Re-
hearing denied October 4, 1965.

Declaration by Continental Motors Corporation, a
Virginia corporation, against the Township of Mus-
kegon, a constitutional body corporate, Orchard
View School District No. 13, an intervening defend-
ant, and the County of Muskegon, an intervening
defendant, to recover 1961 personal property taxes
and a statutory collection fee paid under protest.
Judgment for defendants.   Plaintiff appeals.   Re-
versed and remanded.

Joseph T. Riley (Butzel, Eaman, Long, Gust &
Kennedy by Clifford W. Van Blarcom and Philip T.
Van Zile, II, of counsel), for plaintiff.

Charles A. Larnard, for defendant township.

*Poppen, Street & Sorensen,* for defendant school district.

*Harry J. Knudsen,* Prosecuting Attorney, for defendant County.

*Paul M. Ladas,* Prosecuting Attorney (*Harold M. Street,* of counsel), for defendant County on application for rehearing.

*Amici Curiae:*
*George E. Hill, Harold D. Beaton,* United States Attorneys, and *H. David Soet,* Assistant United States Attorney, *Louis F. Oberdorfer,* Assistant Attorney General, *John B. Jones, Jr.,* Acting Assistant Attorney General, *Lee A. Jackson, I. Henry Kutz,* and *Robert A. Bernstein,* Attorneys, Department of Justice, for United States.

*Robert Reese,* Corporation Counsel, and *John H. Witherspoon* and *Julius C. Pliskow,* Assistants Corporation Counsel, for City of Detroit on application for rehearing.

*Samuel H. Olsen,* Prosecuting Attorney, and *Aloysius J. Suchy* and *William F. Koney,* Assistant Prosecuting Attorneys, for County of Wayne on application for rehearing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for the State, on application for rehearing.

Souris, J. In this appeal plaintiff challenges the validity of PA 1959, No 266. Pursuant to legislative authorization purportedly contained in that act, by its amendment of section 14 of the general property tax law,[1] the defendant township assessed plaintiff corporation taxes in the amount of $63,000 for the 1961 tax year upon the value of personal property

---

[1] Section 14 of PA 1893, No 206, as amended (CL 1948, § 211.14, as amended [Stat Ann 1960 Rev § 7.14]).

consisting of machinery and equipment in plaintiff's possession on December 31, 1960, the tax day, which it was using in the performance of government contracts, but title to which machinery and equipment was in the United States government. Plaintiff paid the tax thus assessed under protest and commenced an action at law to recover such taxes. Upon adverse judgment below, this appeal was taken.

Act No 266 amended section 14 of the general tax law by adding the words "and personal property not otherwise taxed under this act which is in the possession of any person, firm or corporation using same in connection with a business conducted for profit shall be deemed the property of such person for taxation and assessed to him accordingly."

The subject of Michigan's taxation of defense production facilities owned by the Federal government but in the possession and use of private contractors and subcontractors of the government has been the subject of much litigation in State and Federal courts and it has generated a substantial volume of judicial and scholarly comment.[2]   The specific

---

2 *United States* v. *City of Detroit,* 345 Mich 601, aff'd 355 US 466 (78 S Ct 474, 2 L ed 2d 424); *Continental Motors Corporation* v. *Township of Muskegon,* 346 Mich 141; *Township of Muskegon* v. *Continental Motors Corporation,* 346 Mich 218, aff'd *sub nom United States* v. *Township of Muskegon,* 355 US 484 (78 S Ct 483, 2 L ed 2d 436); *City of Detroit* v. *Murray Corporation of America* (CA 6, 1956), 234 F2d 380, rev 355 US 489 (78 S Ct 458, 2 L ed 2d 441); *Continental Motors Corporation* v. *Township of Muskegon,* 365 Mich 191; *General Motors Corporation* v. *City of Detroit,* 372 Mich 234; *Continental Motors Corporation* v. *Township of Muskegon,* 375 Mich 13; Kurth, The Aftermath of the Michigan Tax Decisions: State Taxation of Federal Property and Activities Today, 13 Military L Rev 167 (1961); Keesling, Property Taxation of Leases and Other Limited Interests, 47 Cal L Rev 470 (1959); State and Local Taxation of the United States and Its Contractors, 29 Law and Contemporary Problems 160 (1964); Van Cleve, States' Rights and Federal Solvency, 1959 Wis L Rev 190; Whelan, Government Contract Privileges: A Fertile Ground for State Taxation, 44 Va L Rev 1099 (1958); comment, 36 U Detroit LJ 323 (1959); note, 21 U Pitt L Rev 697 (1960); note, 27 U Cinc L Rev 315 (1958); note, 1958 U Ill LF 305; note, 32 Temp LQ 110 (1958); note, 11 Vand L Rev 1440 (1958); note, 61 W Va L Rev 53 (1958); note, 30 Miss LJ 80 (1958).

issue presented in this appeal relating to the effect of PA 1959, No 266 is, however, a matter of first impression, although some comment by way of *obiter dicta* was made with respect thereto in *Continental Motors Corporation* v. *Township of Muskegon,* 365 Mich 191, and *General Motors Corporation* v. *City of Detroit,* 372 Mich 234. Broadly stated, the issues presented in the parties' oral arguments and in their briefs include the nature of the tax authorized by Act No 266, whether ad valorem or specific; the measure of the tax, whether the true cash value of the property possessed and used or of the right to possession and use; and the constitutionality of the tax the ultimate burden of which, although assessed and initially paid by plaintiff as possessor and user of the government's personal property, will be borne by the Federal government which itself is constitutionally immune from direct taxation by the States.[3]

In *Continental Motors Corporation* v. *Township of Muskegon,* 365 Mich 191, *supra,* we held that prior to PA 1959, No 266, our legislature had not authorized a tax on possessory rights or other limited interests in personal property. We said, in *Continental,* that by enactment of Act No 266 the legislature authorized a tax on beneficial rights in personal property such as were involved there (365 Mich at 199) and as are involved here. Later in the opinion, at p 200, we said that since 1959 possessory interests in personal property, otherwise exempt from taxation, have been made taxable. Now in the case at bar, the issue being squarely before us for decision, we must determine the constitutional validity of that which we said the legislature sought to accomplish by Act No 266.

The major thrust of appellant's attack against Act No 266 is that it imposes an ad valorem tax upon the

---

[3] See US Const, Art 1, §§ 2, 8, 9.

interest of a possessor and user of another's tax-exempt tangible personal property measured by the cash value of the tangible property rather than by the cash value of the possessor's interest therein. Appellee meets this attack principally by contending that the possessory interest is an interest in the property which interest is subject to an ad valorem tax and, because such interest includes the right to use the property in a private business conducted for profit, its value for such tax purposes is equivalent to the cash value of the tangible property. Other arguments are advanced, pro and con, but in the view we take of Act No 266 none of the arguments advanced need be considered for purposes of decision.

When *Continental Motors Corporation* v. *Township of Muskegon,* 365 Mich 191, *supra,* was decided, Act No 266 was not before the Court for determination of its constitutional validity. Nonetheless, by way of *obiter dictum,* we suggested, at p 200, that it was of significance that Act No 266 was cast in the pattern of an ad valorem tax rather than in express language of a specific tax upon possessory interests. Earlier, by separate legislative enactment of PA 1953, No 189,[4] the legislature imposed a new tax upon possessory interests in another's tax-exempt realty when such realty is used in a business conducted for profit. This new tax has been held to be a specific or excise tax upon the privilege of possession and use and not an ad valorem tax on the realty itself notwithstanding the measure of the tax is the cash value of the realty. *United States* v. *City of Detroit,* 345 Mich 601, 608, aff'd 355 US 466 (78 S Ct 474, 2 L ed 2d 424) (1958), and *Township of Muskegon* v. *Continental Motors Corporation,* 346 Mich 218, 222, aff'd *sub nom United States* v. *Town-*

---

[4] CLS 1961, §§ 211.181, 211.182 (Stat Ann 1963 Cum Supp § 7.7[5] and Stat Ann 1960 Rev § 7.7[6]).

*ship of Muskegon,* 355 US 484 (78 S Ct 483, 2 L ed
2d 436) (1958). Instead of enacting a distinctively
separate tax to reach possessory interests in an-
other's tax-exempt personal property, as was done
in PA 1953, No 189 to reach such interests in realty,
the legislature in 1959 sought to accomplish the same
result by amendment of the State's general property
tax law which theretofore imposed only an ad
valorem property tax. See *Continental Motors Cor-
poration* v. *Township of Muskegon,* 365 Mich 191,
197. It is our decision that notwithstanding the
legislative effort to draw the new tax in the
pattern of an ad valorem property tax, it comprises
in actuality a specific or excise tax and was, there-
fore, not an appropriate subject to engraft upon the
general property tax law by amendment thereof with-
out also amending that law's title to comply with
the requirements of article 5, § 21 of our then ef-
fective Constitution of 1908.

That a tax upon possessory rights, such as are in-
volved here, is an excise and not an ad valorem prop-
erty tax seems to us too clear for sustained debate.
Just two years ago, in *Dooley* v. *City of Detroit,* 370
Mich 194, we had occasion to consider the nature of
excises for the purpose of determining the validity
of a city ordinance imposing an income tax. In that
case, at p 205 *et seq.,* we again defined an excise as
"a tax imposed upon the performance of an act, the
engaging in an occupation, or the enjoyment of a
privilege", citing 26 RCL, Taxation, § 209, at p 236,
which had been relied upon in earlier decisions of
this Court. While the legislature in imposing the
new tax has utilized the language of ad valorem tax-
ation, the tax nonetheless in its operation and prac-
tical effect is a tax upon the privilege of possession
and use for profit of another's tax-exempt personal
property and, therefore, it is an excise and not an
ad valorem property tax. The importance of this

distinction lies in the fact that whatever legislative name or trappings a new tax bears it may not be imposed validly by amendment of the general property tax law unless it can be said that that law's title is broad enough to include within its scope the new tax or, if not, unless the law's title also is amended to enlarge its scope.

Article 5, § 21 of our Constitution of 1908, effective when amendatory Act No 266 was adopted, read as follows:

"No law shall embrace more than 1 object, which shall be expressed in its title. No law shall be revised, altered or amended by reference to its title only; but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length. No act shall take effect or be in force until the expiration of 90 days from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a 2/3 vote of the members elected to each house."

The purpose of such constitutional provision needs no extensive exposition for it has been the subject of many opinions of this Court, among them being *People, ex rel. Drake,* v. *Mahaney,* 13 Mich 481; *Ryerson* v. *Utley,* 16 Mich 269; *Bissell* v. *Wayne Probate Judge,* 58 Mich 237; *Brooks* v. *Hydorn,* 76 Mich 273; *Vernor* v. *Secretary of State,* 179 Mich 157 (Ann Cas 1915D, 425); *MacLean* v. *State Board of Control for Vocational Education,* 294 Mich 45; *Leininger* v. *Secretary of State,* 316 Mich 644; and *People* v. *Stanley,* 344 Mich 530. It is sufficient to say only that the title of a legislative act must give notice to legislators and others interested of the object of the law thereby assuring them that only matters germane to the object expressed in the title will be enacted into law.

The title of the general property tax law, as it had been amended prior to 1959, stated its object as follows:

"To provide for the assessment of property and the levy and collection of taxes thereon, and for the collection of taxes heretofore and hereafter levied; making such taxes a lien on the lands taxed, establishing and continuing such lien, providing for the sale and conveyance of lands delinquent for taxes and for the inspection and disposition of lands bid off to the State and not redeemed or purchased; to define and limit the jurisdiction of the courts in proceedings in connection therewith; to limit the time within which actions may be brought; to prescribe certain limitations with respect to rates of taxation; to provide penalties for the violation of this act; and to repeal all acts and parts of acts in anywise contravening any of the provisions of this act."

As was noted in *Knott* v. *City of Flint,* 363 Mich 483, at 495, the language of the title relates "solely to the taxation of property and the procedure to be followed with reference thereto." Nothing in the title would so much as suggest that excise taxes, such as our corporate franchise tax,[5] our sales[6] and use[7] taxes, or a tax on possessory rights to use another's tax-exempt property, would be found in the act to which the title relates.

A basic distinction between an ad valorem property tax and an excise tax is that the former is regarded as primarily *in rem* in nature while the latter is regarded as *in personam* in nature. See *United States* v. *County of Allegheny,* 322 US 174, 184 (64 S Ct 908, 88 L ed 1209) (1944); *Park Building Co.* v. *George P. Yost Fur Co.,* 208 Mich 349, 361; *Dooley* v. *City of Detroit,* 370 Mich 194, 204.

---

[5] CL 1948 and CLS 1961, § 450.301 *et seq.* (Stat Ann 1963 Rev and Stat Ann 1963 Cum Supp § 21.201 *et seq.*).

[6] CLS 1961, § 205.51 *et seq.* (Stat Ann 1960 Rev § 7.521 *et seq.*).

[7] CLS 1961, § 205.91 *et seq.* (Stat Ann 1960 Rev § 7.555 *et seq.*).

This being so, an act entitled "An Act to provide for the assessment of property and the levy and collection of taxes thereon, * * * making such taxes a lien on the lands taxed" may not be amended to provide for excise taxation unless the title is also amended to indicate that a fundamentally different type of tax is being imposed, one which is not, viewing the cases and statutes of this State, subsumed under the rubric of a *property* tax. As further demonstrating the crucial significance of the distinction between a *property* tax and an excise or privilege tax, see *Esso Standard Oil Co.* v. *Evans,* 345 US 495 (73 S Ct 800, 97 L ed 1174) (1953).

Thus, just as a tax upon possessory interests in another's tax-exempt realty has been held to be in the nature of an excise tax rather than an ad valorem property tax, so, analogously, do we hold that a tax upon possessory interests in another's tax-exempt personalty is an excise tax. Being an excise tax rather than a property tax, it may not, consistently with article 5, § 21 of the 1908 Constitution, be included in an act whose title imports that it deals only with property taxes. The decision of the court below is reversed and this cause is remanded thereto for entry of a judgment in favor of plaintiff and against defendant for the 1961 taxes and collection fee paid under protest together with interest thereon as provided by law.[8] No costs may be taxed, a constitutional question involving the validity of a tax statute being involved.

DETHMERS, KELLY, BLACK, and O'HARA, JJ., concurred with SOURIS, J.

ADAMS, J. (*dissenting*). The line between property and privilege taxes, although visible, is "drawn

---

[8] See CL 1948, § 438.7 (Stat Ann 1964 Rev § 19.4)—REPORTER.

by an unsteady hand." *City of Detroit* v. *Murray Corporation of America,* 355 US 489, 510 (78 S Ct 486, 2 L ed 2d 441, 460). On this appeal we decide upon which side of the line to place PA 1959, No 266.[1]

The act deems personal property used in connection with a business conducted for profit to be the property of the person using it. Use of property gives rise to the legal concept of "deeming" ownership and to the constitutional objection that Act No 266 creates a tax on the privilege of use. The use is not taxed. The right to use gives rise to the legal concept of ownership. This is the "property" that is taxed.

This is a fine line, but it accords with the facts. Property, as the word is commonly used, denotes an entire object. In its legal sense the object is broken down into various attributes—such as the right to use, the right to mortgage, the right to lease, et cetera. These rights, viewed together, are referred to as the bundle of rights involved in the ownership of property. 1 Powell (1949), Real Property, § 7, pp 9, 10; 1 Thompson (1964 Replacement), Real Property, § 1, p 2. The rights *are* property since the object has no significance except as it is utilized in the manner which these rights describe. 1 Tiffany, Real Property (3d ed), § 2, p 4.[2]

---

[1] PA 1893, No 206. § 14, as amended (CLS 1961, § 211.14 [Stat Ann 1960 Rev § 7.14]). This section has since been amended by PA 1964, No 275 [Stat Ann 1965 Cum Supp § 7.14]), which has no bearing upon this case except as it may indicate that the legislature has again looked at this statute and has again been content with its characterization of it.

[2] American Law Institute, Restatement of the Law, ch 1, § 5, comment e:

"*Complete property.* The totality of these rights, privileges, powers and immunities which it is legally possible for a person to have with regard to a given piece of land or with regard to a thing other than land, that are other than those which all other members of society have as such, constitutes complete property in such land or thing other than land. This totality varies from time to time, and from place to place, either because of changes in the common law, or because of alterations by statute. Thus if the law should come to be that no person could build a five-story building on his land, the totality of

"It is strongly urged that property rather than being an indivisable entity is instead an aggregate or bundle of rights and powers and that anyone having *any* of such rights and powers should properly be considered an owner of property." Keesling, Conflicting Conceptions of Ownership in Taxation, 44 Cal L Rev 866. (Emphasis supplied.)

Act No 266 is nothing more, or less, than a tax on a possessor's interest. Such taxes have been characterized, unquestioningly, as property taxes. See annotation, 84 ALR 1310; Keesling, *supra,* p 868. In the usual case the possessor pays rent directly to the owner. But simply because the appellant possessor pays his rent in the form of sales to the owner at reduced prices should not obscure the fact that he possesses, and pays for, something of value.

Here, because of the importance of the right and because of the limited period the tax covers (1 year),

---

privileges that every person has who owns land would be correspondingly diminished. So if a zoning ordinance were passed, the totality of interests would be affected, to the extent of the ordinance, for persons owning land within the district to which the ordinance applied. At any one time and place, however, there is a maximum combination of rights, privileges, powers and immunities in the land that is legally possible, and which constitutes complete property in the land, or thing other than land."

For a discussion of the term "property" by the United States Supreme Court in a condemnation proceeding, see *United States* v. *General Motors Corp.,* 323 US 373, 377, 378 (65 S Ct 357, 359, 89 L ed 311, 318, 156 ALR 390, 393):

"The critical terms are 'property,' 'taken' and 'just compensation.' It is conceivable that the first was used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. On the other hand, it may have been employed in a more accurate sense to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. In point of fact, the construction given the phrase has been the latter. When the sovereign exercises the power of eminent domain it substitutes itself in relation to the physical thing in question in place of him who formerly bore the relation to that thing, which we denominate ownership. In other words, it deals with what lawyers term the individual's 'interest' in the thing in question. That interest may comprise the group of rights for which the shorthand term is 'a fee simple' or it may be the interest known as an 'estate or tenancy for years,' as in the present instance. The constitutional provision is addressed to every sort of interest the citizen may possess."

the law equates the total bundle with possession and use. The tax is not laid upon the privilege of severing the bundle of rights. It is not measured by the fact or amount of use or severance. The law finds ownership in the right to use. In doing so, it pierces to the reality of the situation and attaches the tax to the person who has the beneficial use and enjoyment of property.

The tax, in both method and object, is properly a part of the general property tax law. Act No 266 provides for assessment in the usual method of the general property tax law—by ad valorem property assessment. Its announced object is to reach *"personal property not otherwise taxed."* This lends fulfillment to the object expressed in the title of the general property tax law which is "to provide for the assessment of property and the levy and collection of taxes thereon."

Act No 266 speaks in the historic ad valorem property tax tradition:

*"Personal property  \*  \*  \*  which is in the possession of any person, firm or corporation* using same in connection with a business conducted for profit *shall be deemed the property* of such person for taxation and *assessed to him accordingly."* (Emphasis supplied.)

The legislature has thus characterized Act No 266. While not conclusive, the courts do seek to give effect to the characterization of a tax in a statute. See annotation, 103 ALR 18, 19. That there is a valid basis for such characterization is indicated by the following quoted from 103 ALR 19, citing as authority *Society for Savings* v. *Coite,* 6 Wall (73 US) 594 (18 L ed 897):

"An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them

and fixing their amounts. If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation of property, and assessed by assessors either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax."

. A tax so characterized is not inimical to the Federal Constitution:

"We see no essential difference so far as constitutional tax immunity is concerned between taxing a person for using property he possesses and taxing him for possessing property he uses when in both instances he uses the property for his own private ends." *City of Detroit* v. *Murray Corporation of America, supra,* p 493.

Appellant reasons that some portion of the bundle of rights comprising the sum total must be attributed to the United States, and, if so, uniformity and cash value requirements must be violated by a measure which includes the entire bundle. However, the fairest value that can be placed upon the worth of such a possessory interest, during the period in which that interest is used in a business conducted for profit, is the current value of the property. The single, the most important incident of ownership of industrial goods is possession and *the right to use them in a business conducted for profit.* That right is coextensive with other forms of ownership if it is borne in mind that the tax covers but a one-year period.

Plaintiff's dominion over the property—machinery and equipment—for plaintiff's purposes is as great as if it were the owner. Through its possessory interest it reaps as much benefit as others using like

property who are owners and pay an identical tax. The observation made in *United States* v. *City of Detroit,* 355 US 466, 470 (78 S Ct 474, 2 L ed 2d 424), relative to PA 1953, No 189 (CLS 1961, § 211.181 [Stat Ann 1960 Rev § 7.7(5)]), applies here:

"Public Act 189 was apparently designed to equalize the annual tax burden carried by private businesses using exempt property with that of similar businesses using nonexempt property. Other things being the same, it seems obvious enough that *use of exempt property is worth as much as use of comparable taxed property during the same interval.*" (Emphasis supplied.)

Appellant complains that its possession and use of the property could be terminated by the government at will shortly after tax day with the effect that it would not receive the full benefit of its possessory interest. This is a common hazard. A merchant whose entire stock is destroyed by fire or flood shortly after tax day suffers a similar misfortune. So does an owner whose property is repossessed because of his inability to meet mortgage payments. A machine may be ruined by careless operation. The examples could be multiplied. Actually, appellant enjoys some advantages over taxpayers who own their machinery. If Continental loses its contract, its tax liability ceases. An *owner* of similar machinery, even though it stands idle, remains subject to the tax.

Pursuant to a rational measure, the appellant's possessory interest was assessed in uniformity with all other property. Appellant, possessed of the complete beneficial enjoyment of the property, has been deemed the owner for tax purposes. There is nothing unreasonable about such criteria.

Justice Souris concedes that by enacting a distinctively separate tax to reach possessory interests

in another's tax-exempt personal property, as was done in PA 1953, No 189, to reach such interests in realty, the result sought here can be achieved; but holds the present tax to be a specific or excise tax and, therefore, inappropriate for the general property tax law. This is tweedle dum and tweedle dee. Tweedle dee, the taxpayer wins; tweedle dum, the township and the school district win. I choose tweedle dum because:

Legislation should be saved from unconstitutionality whenever possible by reasonable and permissible interpretation.

"All doubts must be resolved in favor of the validity of the action of the legislature. In *Cady* v. *City of Detroit,* 289 Mich 499, 505, it was said:

" 'A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. *Scott* v. *Smart's Executors,* 1 Mich 295; *Sears* v. *Cottrell,* 5 Mich 251; *Thompson* v. *Auditor General,* 261 Mich 624. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt. *Attorney General, ex rel. Barbour,* v. *Lindsay,* 178 Mich 524; *Bowerman* v. *Sheehan,* 242 Mich 95 (61 ALR 859).'

"The foregoing language was quoted with approval in *1426 Woodward Avenue Corp.* v. *Wolff,* 312 Mich 352, 369, 370. See, also, *Naudzius* v. *Lahr,* 253 Mich 216 (74 ALR 1189, 30 NCCA 179); *People*

v. *Victor,* 287 Mich 506 (124 ALR 316); 16 CJS, p
542." *People* v. *Piasecki,* 333 Mich 122, 143.

If it may be construed in two ways, that which is
consistent with its constitutionality should be chosen.
See *People* v. *Dubina,* 304 Mich 363, 369 (145 ALR
1235), and cases therein cited.

The judgment should be affirmed. Costs to ap-
pellees.

T. M. KAVANAGH, C. J., and SMITH, J., concurred
with ADAMS, J.