**[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 500.]**

GENERAL DYNAMICS LAND SYSTEMS, INC., APPELLANT AND CROSS-APPELLEE,

*v.* TRACY, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *Gen. Dynamics Land Sys., Inc. v. Tracy*, 1998-Ohio-19.]

*Taxation—Tank plant leased from United States Army is a federal enclave—*
*Lessee of plant not subject to personal property tax.*

(No. 97-1920—Submitted September 16, 1998—Decided November 10, 1998.)

APPEAL from the Board of Tax Appeals, Nos. 95-A-443 and 95-A-444.

_____

{¶ 1} The United States Army purchased the property on which the Lima Army Tank Plant sits in 1942 to manufacture weapons. On April 17, 1943, and on December 4, 1945, the Secretary of War sent letters to notify the Governor of Ohio that "the United States accepts exclusive jurisdiction over all lands acquired by it for military purposes within the State of Ohio, title to which has heretofore vested in the United States, and over which exclusive jurisdiction has not heretofore been obtained." The Army has contracted since then with private businesses to operate a plant to manufacture combat vehicles on the property.

{¶ 2} In 1982, General Dynamics Land Systems, Inc. ("General Dynamics"), appellant and cross-appellee, agreed to manage the plant, commencing in 1983, and, in a separate contract, to manufacture tanks at the plant. General Dynamics does not pay rent for the plant; the Army has granted it a "revocable license to use" the plant and reimburses it for its expenses in managing the plant. General Dynamics receives its profits on the markup for producing the tanks.

{¶ 3} General Dynamics owns personal property with which it manufactures tanks at the plant. The Tax Commissioner, appellee and cross-appellant, assessed personal property tax against this property for tax years 1988,

1989, and 1990. General Dynamics appealed this assessment to the Board of Tax Appeals ("BTA"), and the BTA affirmed the commissioner's order. The BTA ruled that the tank plant was a federal enclave but that, under Section 2667, Title 10, U.S.Code, the federal government had permitted Ohio to tax General Dynamics' personal property.

{¶ 4} This cause is now before the court upon an appeal as of right.

_____

*Jenner & Block, Paul M. Smith* and *Paul W. Cobb, Jr.; Cory, Meredith, Witter, Roush & Cheney* and *Robert J. Meredith*, for appellant and cross-appellee.

*Betty D. Montgomery*, Attorney General, *Robert C. Maier*, *Barton A. Hubbard* and *Barbara L. Barber,* Assistant Attorneys General, for appellees and cross-appellants.

*Scott, Scriven & Wahoff, L.L.P., Gregory B. Scott* and *Edward L. Ostrowski, Jr.,* urging affirmance for *amicus curiae,* Shawnee Local School District Board of Education.

*Loretta C. Argrett*, United States Assistant Attorney General; *David English Carmack* and *Donald B. Tobin*, urging reversal for *amicus curiae*, United States of America.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 5} We will discuss the commissioner's cross-appeal first. The issue in the cross-appeal, whether the tank plant is on a federal enclave, is the threshold issue that the BTA decided. If the tank plant is *not* on a federal enclave, the commissioner may tax General Dynamics' personal property, and we need not address General Dynamics' appeal.

{¶ 6} Clause 17, Section 8, Article I of the United States Constitution authorizes Congress to exercise exclusive jurisdiction over property it acquires:

"The Congress shall have Power  * * * To exercise exclusive Legislation in all Cases whatsoever, over such District [of Columbia]  * * * as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

{¶ 7} According to *Adams v. United States* (1943), 319 U.S. 312, 314, 63 S.Ct. 1122, 1123, 87 L.Ed. 1421, 1423, Section 255, Title 40, U.S.Code "created a definite method of acceptance of jurisdiction [by the United States] so that all persons could know whether the [federal] government had obtained 'no jurisdiction at all, or partial jurisdiction, or exclusive jurisdiction.' "  Section 255 states:

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated.  *Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.*"  (Emphasis added.)

**{¶ 8}** Thus, the federal government acquires needed property and acquires jurisdiction over the property with the consent of the legislature of the state and acceptance of jurisdiction by the United States. The Ohio General Assembly consented, in accordance with Clause 17 and Section 255, to the acquisition by the United States "of any land in this state required for sites for custom houses, courthouses, post offices, arsenals, or other public buildings whatever, or for any other purposes of the government." R.C. 159.03. Furthermore, the General Assembly ceded exclusive jurisdiction to the United States "in and over any land acquired by the United States under section 159.03 of the Revised Code  * * * for all purposes except the service upon such sites of all civil and criminal process of the courts of this state." R.C. 159.04.

**{¶ 9}** The commissioner concedes that the United States owns the tank plant, that Ohio had ceded jurisdiction over it to the United States, and that Ohio did not reserve the power to tax personal property on a federal enclave. The commissioner, however, contends that the federal government has not accepted exclusive jurisdiction over the tank plant. He argues that the Secretary of War's letters referred only to lands acquired for military purposes and that there was insufficient documentation to establish that the Lima tank plant was acquired for military purposes. He also argues that the acceptance letters did not specifically identify the tank plant and that, consequently, the United States did not accept exclusive jurisdiction over the plant.

**{¶ 10}** As to the purpose of the purchase, we reject the commissioner's argument that a military purpose must be expressed in a deed, letter of acceptance, or other public document. We hold that the military purpose was sufficiently shown by internal War Department memoranda and by the fact that the newly purchased land was rapidly put to use in processing and modifying combat vehicles.

**{¶ 11}** As to the identification of the property, the Ohio Attorney General has concluded in several opinions that the language contained in the 1943 and 1945

4

letters from the Secretary of War accepted jurisdiction over all lands obtained for military purposes for the United States and, thus, vests exclusive jurisdiction in the United States. "While not binding, the analysis in the Attorney General opinion is persuasive." *State ex rel. N. Olmsted Fire Fighters Assn. v. N. Olmsted* (1992), 64 Ohio St.3d 530, 533, 597 N.E.2d 136, 139.

{¶ 12} In 1945 Ohio Atty.Gen.Ops. No. 649, the Attorney General considered the 1945 letter. The Attorney General first reviewed the constitutional and statutory procedure to vest jurisdiction in the federal government over federal lands. The Attorney General concluded that "when acceptance of such jurisdiction is effected in accordance with the provisions of the Federal statute, jurisdiction over such lands, to the extent that same has been accepted by a duly authorized authority acting on behalf of the United States and not however to greater extent than that ceded by the statutes of Ohio, becomes vested in the United States Government."

{¶ 13} In 1952 Ohio Atty.Gen.Ops. No. 1877, the Attorney General analyzed the jurisdiction over the highway passing through the Wright Field Military Reservation and the Patterson Field Military Reservation. He stated that the 1945 letter "gave notice of the acceptance by the United States of 'exclusive jurisdiction over all lands acquired by it for military purposes within the State of Ohio, title to which has heretofore vested in the United States.' " The Attorney General, without any hesitancy, stated that the letter of acceptance, "set out in full in Opinion No. 649," led him to conclude that the United States acquired exclusive jurisdiction over the disputed highway in 1945.

{¶ 14} We conclude that the United States Army has accepted jurisdiction over the tank plant. The Attorney General had no difficulty deciding that the language of the letter of acceptance was sufficient without specific identification of properties. Although they are not binding, we find those Attorney General opinions persuasive and conclude that the Army has accepted exclusive jurisdiction over the tank plant and that the tank plant is on a federal enclave.

**{¶ 15}** Next, turning to General Dynamics' appeal, General Dynamics argues that the Army has not leased the tank plant to General Dynamics because the Army has granted General Dynamics a license to use the facility under a rent-free, reimbursement-of-cost contract. Thus, according to General Dynamics, Ohio cannot tax General Dynamics' interest in the property under Section 2667, Title 10, U.S.Code. The commissioner, arguing in support of the BTA's ruling, replies that this statute allows Ohio to tax General Dynamics' personal property.

**{¶ 16}** Section 2667, Title 10, U.S.Code empowers the military to lease its property to promote the national defense. Subsection (e) states:

"The interest of a lessee of property leased under this section may be taxed by State or local governments."

**{¶ 17}** We find that General Dynamics leased the tank plant from the Army. In *United States v. Muskegon Twp.* (1958), 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436, the Supreme Court ruled that a rent-free license to use a manufacturing facility furnished by the United States government was a lease. *Muskegon* was a case of constitutional immunity from state taxation, not a federal enclave case. Nevertheless, the court's analysis is relevant:

"Constitutional immunity from state taxation does not rest on such insubstantial formalities as whether the party using government property is formally designated a 'lessee.' Otherwise immunity could be conferred by a simple stroke of the draftsman's pen. The vital thing * * *, and we think permissibly so, is that Continental was using the property in connection with its own commercial activities. The case might well be different if the Government had reserved such control over the activities and financial gain of Continental that it could properly be called a 'servant' of the United States in agency terms. But here Continental was not so assimilated by the Government as to become one of its constituent parts. It was free within broad limits to use the property as it thought advantageous and

convenient in performing its contracts and maximizing its profits from them." 355 U.S. at 486, 78 S.Ct. at 485, 2 L.Ed.2d at 438.

{¶ 18} Here, General Dynamics manages the tank plant in which it manufactures tanks. It pays no rent for the plant, and receives reimbursement of its costs in managing the plant. General Dynamics also may manufacture, subject to written approval of the Army, products for others at the plant; in fact, General Dynamics manufactured tanks for the government of Saudi Arabia at the plant. Furthermore, General Dynamics is responsible for security at the plant, securing it according to Army regulations. This security includes counterterrorism, crime prevention, and security of the property. We conclude that General Dynamics exercises sufficient autonomy at the plant, and we find that it is a private entrepreneur, not an instrument or servant of the United States.

{¶ 19} Nevertheless, we rule that Ohio may not tax the disputed personal property. Section 2667(e), Title 10, U.S.Code allows Ohio to tax "[t]he interest of a lessee of property leased under this section." General Dynamics owns the personal property Ohio seeks to tax; it did not lease the personal property from the federal government under Section 2667. Even if Section 2667 permits taxation of the tank plant, it does not permit taxation of personal property located on the federal enclave. (Ohio, in any event, does not tax leasehold interests in real estate. R.C. 5701.02; *Franklin Cty. v. Lockbourne Manor, Inc.* [1958], 168 Ohio St. 286, 6 O.O.2d 489, 154 N.E.2d 147.)

{¶ 20} The commissioner, however, claims that Ohio may tax personal property owned by a lessee that the lessee brings onto leased real property under Section 2667. In support of this claim, the commissioner cites *Offutt Hous. Co. v. Sarpy Cty.* (1956), 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151, and *Secretary of the Treasury of Puerto Rico v. Esso Std. Oil Co.* (C.A.1, 1964), 332 F.2d 624. *Offutt* is distinguishable; *Esso* faces contradicting decisions.

**{¶ 21}** In *Offutt*, the Supreme Court permitted Nebraska to tax the leasehold interest of the lessee under the predecessor Act to Section 2667. The court also allowed Nebraska to tax appliances. The court, however, described the interest in the appliances as determined by the lease and hence taxable, because the contract required Offutt Housing Company to provide the appliances for its tenants and because the appliances or their replacements were to be left on the property at the end of the lease. The agreement in the instant case does not require General Dynamics to leave its personal property at the tank plant at the end of the lease. Thus, the disputed personal property is not subject to the lease as it was in *Offutt*.

**{¶ 22}** In *Esso*, the First Circuit Court of Appeals permitted Puerto Rico to tax the personal property of a lessee under Section 2667. The court acknowledged that *Offutt* was not on point on its facts. The court, nevertheless, interpreted the statutory language by resorting to its legislative history as stated in *Offutt*. The court declared that it was the statute's intent not only to permit taxation of property leased under the Act, but "also to permit state and local taxation of the interest of the owner of property brought onto land leased under the Act. Otherwise, if a lessee could move its property onto leased land and escape imposition of state and local taxation, the concern of Congress about loss of state and local revenue and its desire to prevent unfairness to competitors of lessees from the United States would be frustrated."

**{¶ 23}** Other cases, however, contradict this conclusion. In *Surplus Trading Co. v. Cook* (1930), 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091, the Supreme Court ruled that Arkansas could not tax Army blankets owned by the Surplus Trading Company and located at Camp Pike, a federal enclave. The court decided this case before enactment of Section 2667, on the principle that a state has no jurisdiction to tax property located on a federal enclave unless the state has reserved the right or the federal government has waived its immunity.

**{¶ 24}** In *Humble Pipe Line Co. v. Waggonner* (1964), 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782, decided after *Offutt* and the enactment of Section 2667, the court disallowed a state tax on the personal property, an oil pipeline and associated equipment, located on a federal enclave and on parts of which the Department of the Interior had leased the right to remove oil and gas. Without discussing Section 2667, which applies only to leases by a military department, the court held that the United States had primary jurisdiction and control over the enclave and that it did not lose this control by lease of property for commercial purposes within the enclave.

**{¶ 25}** In *Adams v. Calvert* (Tex.1965), 396 S.W.2d 948, the court ruled that Texas had no jurisdiction to tax privately owned personal property located on a federal enclave, despite a Texas statute specifically allowing such taxation. Texas had attempted to tax coin-operated amusement machines that the owner had placed on Fort Hood under an agreement with the Army.

**{¶ 26}** In this case, Ohio has not reserved the power to tax personal property on a federal enclave; it has reserved only the power to serve process in civil and criminal matters. In the final analysis, however, Section 2667(e) permits Ohio to tax only "the interest of a lessee of property leased under this section." This statute does not allow Ohio to tax General Dynamics' ownership interests in personal property used at the leased tank plant.

**{¶ 27}** We hold that the tank plant is on a federal enclave. We further hold that Ohio has not reserved the power to tax personal property of a lessee of the plant, nor has the federal government, under Section 2667, permitted Ohio to tax such property. Accordingly, we hold that the BTA's decision is unlawful, and we reverse it.

*Decision reversed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____