OPINION
{¶ 1} Appellant, Portage County Regional Planning Commission (the "Commission"), was created in 1984, pursuant to R.C. 713.21. The Commission was created upon the passage of Resolution 84-32 by the Portage County Board of Commissioners. The Commission is a political subdivision pursuant to R.C. 2744.01(F).
 {¶ 2} Through this resolution, a set of bylaws were adopted for the governance of the Commission. In 1984, appellee, the city of Kent ("Kent"), a municipal corporation *Page 2 
organized under the laws of the state of Ohio, joined the Commission as a dues-paying member. One of the provisions in the bylaws required members of the Commission to pay annual dues based on each respective member's estimated population in the previous year. Moreover, the bylaws included a provision permitting members to withdraw from the Commission. In order to withdraw from the Commission, the member was required to give a 12-month notice to the secretary of the Commission. Further, the member was not relieved from paying dues during the notice period.
 {¶ 3} The bylaws contained a notice provision, although the notice period varied, until August 12, 1998. At that time, the bylaws were amended by removing the withdrawal provision. However, nothing affirmative was added to the bylaws that stated no member could withdraw; the bylaws simply became silent on this issue. Kent was a member of the Commission at the time this change was made.
 {¶ 4} On December 17, 1998, Kent advised the Commission in writing that, "Kent's budget for 1999 does not include the $12,000 appropriation to maintain the City's membership dues for the Portage County Regional Planning Commission." However, the Commission sent Kent an invoice for its 1999 dues payment. Kent did not pay the invoice for its 1999 dues. Moreover, the Commission continued to bill Kent for annual membership dues.
 {¶ 5} On September 11, 2002, Kent sent a letter to the Commission stating "that the Kent City Council has decided to rejoin the Portage County Regional Planning Commission effective for the second half of 2002." Kent paid the Commission its dues covering the last six months of 2002. *Page 3 
 {¶ 6} Then, at the beginning of 2003, the Commission invoiced Kent for dues for 2003. Kent did not pay the invoice for 2003.
 {¶ 7} Moreover, pursuant to Section X(A)(1) of the Commission's bylaws, and under the authority of R.C. 713.21, each cooperating municipality and township was to contribute to the Commission in each calendar year dues based on the estimates of the population of that member for the previous year.
 {¶ 8} On July 30, 2002, the Commission filed a complaint in the Portage County Court of Common Pleas for declaratory judgment against Kent. On September 2, 2003, the trial court granted the Commission's motion for summary judgment as to the issue of dues, but granted Kent's motion for summary judgment concerning withdrawal from the Commission. The trial court concluded that members of the Commission were permitted to "withdraw from the Commission, with reasonable notice and after satisfying the withdrawing member's share of the Commission's existing debts and obligations." The trial court also concluded that members of the Commission were required to pay dues.
 {¶ 9} On September 15, 2003, the Commission filed a motion for a statement of relief declaring the parties' respective rights and obligations. On September 29, 2003, the Commission appealed the trial court's decision. This court dismissed the appeal sua sponte for lack of jurisdiction, determining the orders issued by the trial court were not final, appealable orders. Portage Cty. Regional Planning Comm. v.Kent, 11th Dist. No. 2003-P-0106, 2004-Ohio-1725.
 {¶ 10} Kent filed an amended answer with a counterclaim on January 26, 2005. An evidentiary hearing was conducted on August 17, 2005. The two issues tried to the *Page 4 
magistrate were: (1) whether Kent's notice of withdrawal was reasonable; and (2) what Kent's unpaid obligations and/or debts are, if any. The magistrate issued a decision on September 2, 2005, finding Kent's December 28, 1998 notice to withdraw for 1999, and Kent's September 11, 2002 notice to withdraw for 2003 were not reasonable and awarding damages to the Commission. Also, the magistrate found in favor of the Commission on Kent's counterclaim.
 {¶ 11} Both parties filed objections to the magistrate's decision. The trial court overruled all of the Commission's objections. Further, the trial court overruled Kent's objection to the magistrate's finding that it had failed to prove its counterclaim. The trial court overruled the magistrate's award of damages to the Commission and ordered no damages to be awarded to either party. The Commission filed a timely notice of appeal.
 {¶ 12} The Commission's first assignment of error states:
 {¶ 13} "The trial court erred to the prejudice of plaintiff-appellant in granting defendant-appellee Kent's motion for summary judgment based on its conclusion that, as a matter of law, members of a regional planning commission have the authority to withdraw."
 {¶ 14} In order for a motion for summary judgment to be granted, the moving party must prove:
 {¶ 15} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to *Page 5 
the party against whom the motion for summary judgment is made."Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 16} Appellate courts review a trial court's entry of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378,383, citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116,119-120.
 {¶ 17} Chapter 713 of the Ohio Revised Code governs planning commissions. R.C. 713.21, which governs the establishment and operation of a regional planning commission, states, in pertinent part:
 {¶ 18} "(A) The planning commission of any municipal corporation or group of municipal corporations, any board of township trustees, and the board of county commissioners of any county in which the municipal corporation or group of municipal corporations is located or of any adjoining county may cooperate in the creation of a regional planning commission, for any region defined as agreed upon by the planningcommissions and boards, exclusive of any territory within the limits of a municipal corporation not having a planning commission. After creation of a regional planning commission, school districts, special districts, authorities, and any other units of local government may participate inthe regional planning commission, upon terms agreed upon by the planningcommissions and boards.
 {¶ 19} "The number of members of a regional planning commission, their method of appointment, and the proportion of the costs of regional planning to be borne *Page 6 
respectively by the various municipal corporations, townships, and counties in the region and by other participating units of local government shall be determined by a majority of the planning commissions and boards." (Emphasis added.)
 {¶ 20} When Kent first joined the Commission in 1984, the original bylaws contained a provision allowing an individual member to withdraw from the Commission. Specifically, members of the Commission were permitted to withdraw provided they give one year's notice and paid their dues during the notice period. While a notice of withdrawal provision stayed in effect through August 1998, the notice period varied.
 {¶ 21} The Commission maintains that members of a regional planning commission, specifically Kent, may not withdraw from the Commission since they have no statutory authority to do so. The arguments of the Commission parallel those of an opinion from the Ohio Attorney General. 1994 Ohio Atty.Gen.Ops. No. 94-068. In that opinion, the Attorney General stated that while the Revised Code enumerates a number of powers and responsibilities for a regional planning commission it does not provide a method by which members of a regional planning commission may withdraw. Id. Therefore, the Attorney General concluded the General Assembly did not intend members to be permitted to withdraw from a regional planning commission. Id.
 {¶ 22} The opinion further reasoned that the General Assembly specifically prescribed methods of withdrawal for numerous other regional or district entities. Id. It also cited portions of R.C. 713.21
which refers to the possibility of "dissolution or termination" of a regional planning commission. The pertinent section of R.C. 713.21, states: *Page 7 
 {¶ 23} "(B) * * * The regional planning commission may purchase, lease with option to purchase, or receive as a gift property and buildings within which it is housed and carries out its responsibilities, provided that the rules of the commission provide for the disposition of the property and buildings if the commission is dissolved or otherwise terminated."
 {¶ 24} The Commission, therefore, argues "given the lack of elaboration on this issue, reasonable minds can only conclude that members of a regional planning commission lack authority to withdraw from the commission and may only cease to be members through dissolution of the regional planning commission itself." Although the Commission relies on the opinion written by the Attorney General, Attorney General opinions are persuasive authority and are not binding on the court.Gen. Dynamics Land Sys., Inc. v. Tracy (1998), 83 Ohio St.3d 500, 504.
 {¶ 25} The Commission reasons that since regional planning commissions are creatures of statute, they only possess those powers which are expressly conferred on them by statute or implied by the language of the statute to carry out their purpose. See D.A.B.E., Inc. v. Toledo-LucasCty. Bd. of Health, 96 Ohio St.3d 250, 2002-Ohio-4172, at ¶ 39. (Citations omitted.) While this court agrees with this statement of law, it disagrees with the Commission's reasoning that since withdrawal is not addressed in R.C. 713.21, a member does not have the power to withdraw from a regional planning commission. The statute under which the regional planning commission is organized is silent on the subject of withdrawal. Therefore, "`[i]t is the duty of this court to give effect to the words used (in a statute), not to delete words used or toinsert words not used.'" (Emphasis in original.) Bernardini v. Board ofEdn. (1979), 58 Ohio St.2d 1, 4, quoting *Page 8 Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm. (1969),20 Ohio St.2d 125, 127 and Wheeling Steel Corp. v. Porterfield (1970),24 Ohio St.2d 24, 28. R.C. 713.21 cites many instances where the "terms agreed upon by the planning commission and boards" dictate a regional planning commission's actions. For example, "[t]he number of members of a regional planning commission, their method of appointment, and the proportion of the costs of regional planning to be borne * * * shall be determined by a majority of the planning commissions and boards." R.C.713.21(A). Moreover, "[a]fter creation of a regional planning commission, school districts, special districts, authorities, and any other units of local government may participate in the regional planning commission, upon terms agreed upon by the planning commissions and boards." Id. Even the Attorney General opinion upon which the Commission relies states, "[b]ecause 713.21 provides no means of operation other than by cooperation among the members, it appears that the terms upon which the commission will wind up its business and satisfy its outstanding obligations are matters that may be determined, as any otherbusiness of the commission, by agreement among the members." (Citation omitted.) (Emphasis added.)
 {¶ 26} In the case sub judice, the members of the Commission must look to the terms agreed upon by the members. However, the bylaws themselves are silent as to the procedure members must follow in order to withdraw. Silence does not equate to a clear understanding by a potential member of the ultimate right to withdraw from membership. Therefore, the courts are required to resolve the impasse.
 {¶ 27} "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." Foster Wheeler Enviresponse, *Page 9 Inc. v. Franklin Cty. Convention Facilities Auth. (1997),78 Ohio St.3d 353, 361, citing Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St. 3d 51, 53. There is nothing in the record to demonstrate that silence in the bylaws resulted in a meeting of the minds with regard to this issue. If it was, in fact, the desire of the Commission to bind members indefinitely and not permit members to withdraw, that is what the bylaws should have said. In that event, any community joining the Commission would clearly understand the obligation. The bylaws should have contained a provision prohibiting members from withdrawing from the Commission, if that was the intention. Since membership in a regional planning commission is voluntary, binding members indefinitely when the bylaws are silent as to such an important issue would be against public policy.
 {¶ 28} Moreover, the Commission argues that any municipal action seeking to withdraw from a regional planning commission would conflict with R.C. 713.21. In order to support this position, the Commission cited State ex rel. Mill Creek Metro. Park Dist. Bd. of Commrs. v.Tablack (1999), 86 Ohio St.3d 293, where the Supreme Court of Ohio determined ordinances passed by the city of Campbell and the village of Sebring were unconstitutional and invalid. In Tablack, Campbell and Sebring passed ordinances to effectively withdraw from a statutorily-created park district, under R.C. Chapter 1545. Id. at 293-294. The Supreme Court of Ohio reasoned that the ordinances passed by Campbell and Sebring had "manifest extraterritorial effects" and were in conflict with R.C. Chapter 1545. Id. at 295-296. Further, the provisions of R.C. Chapter 1545 are general laws and "must be accorded a uniform operation throughout the state." Id. *Page 10 
 {¶ 29} The Home-Rule Amendment authorizes Ohio municipalities "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution. In order to determine the validity of a municipal ordinance, a court must resolve whether "(1) the challenged ordinances involve the exercise of powers of local self-government, (2) the state statutes are general or special laws, and (3) there is any conflict between the ordinances and state law." State ex rel. Mill CreekMetro Park Dist. Bd. of Commrs. v. Tablack, 86 Ohio St.3d at 295, citingOhio Assn. of Private Detective Agencies, Inc. v. N. Olmsted (1992),65 Ohio St.3d 242, 244-245 and Fairview Park v. Barefoot Grass Lawn Serv.,Inc. (1996), 115 Ohio App.3d 306, 310.
 {¶ 30} The case cited by the Commission, however, is distinguishable from the instant case. In Mill Creek Metro Park Dist. Bd. ofCommrs., 86 Ohio St.3d 293, the statute at issue, R.C. 1545.041, specifically addresses a tax levy, if a tax levy is proposed. In fact, R.C. 1545.041 lays out the language to be put on the ballot submitted to the voters and further states, "[i]f the proposed conversion is approved by at least a majority of the electors voting on the proposal, the township park district that seeks conversion shall become a park district subject to Chapter 1545 of the Revised Code * * *." R.C.1545.041(E). In the instant case, R.C. 713.21 does not specifically allow a member of a regional planning commission to withdraw, but it also does not prohibit a member of a regional planning commission to withdraw. There is nothing in the action taken by Kent in conflict with R.C. 713.21. *Page 11 
 {¶ 31} Accordingly, the trial court did not err in granting Kent's motion for summary judgment determining the issue of whether a member of the Commission can ever withdraw.
 {¶ 32} The Commission's second assignment of error states:
 {¶ 33} "The trial court erred and abused its discretion to the prejudice of plaintiff-appellant in sustaining defendant-appellee's objection to the magistrate's decision."
 {¶ 34} Unless the trial court has abused its discretion, an appellate court will not reverse the trial court's decision to adopt, reject, or modify a referee's report. Wade v. Wade (1996), 113 Ohio App.3d 414,419. An abuse of discretion has been defined as "`more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. (Citations omitted.)
 {¶ 35} The magistrate determined the notice given by Kent was not reasonable and Kent must pay its 1999 membership dues to the Commission in the amount of $11,983.60. In rendering this decision, the magistrate stated the "Commission must establish its budget and present it to the Portage County Auditor by July 20 for the following fiscal year, which begins January 1." Also, the magistrate reasoned that Kent was "the most populous municipal member of the Commission and its membership (or non-membership) in the Commission would have a profound effect on the way the Commission allocated its resources amongst all its members and its workload amongst its staff." The magistrate further concluded Kent owes the Commission $12,268.02 for its dues in the year 2003. While the magistrate stated that the Commission could not have relied on Kent's 2003 dues when it formulated its 2003 budget, she also held "it is *Page 12 
unfair to the Commission and the other members of the Commission to withdraw with little or no notice, as Kent has done on several occasions."
 {¶ 36} Both Kent and the Commission objected to the magistrate's decision. The trial court affirmed the magistrate's decision in part, reversed it in part, and entered judgment.
 {¶ 37} The Commission argues that in overruling the magistrate's award of damages to the Commission, the trial court clearly abused its discretion. The trial court stated, "[t]he Commission failed to prove that it was damaged by Kent's withdrawal and non-payment of dues or that it incurred any specific debt or obligation due to Kent's membership. The Court further finds that the Commission's lack of any formal or written contracts is puzzling in light of its stated purpose — long-term regional planning."
 {¶ 38} R.C. 713.21 is not silent as to the costs of a regional planning commission. R.C. 713.21, states, in pertinent part:
 {¶ 39} "(A) * * * [T]he proportion of the costs of regional planning to be borne respectively by the various municipal corporations, townships, and counties in the region and by other participating units of local government shall be determined by a majority of the planningcommissions and boards. Costs may include, but are not limited to, compensation and actual and necessary expenses for appointive members of a regional planning commission who are not also holding another public office to which they were elected." (Emphasis added.)
 {¶ 40} Although R.C. 713.21 does not delineate the exact method of collecting dues from the members of the Commission, it does specify that it "shall be determined by a majority of the planning commission and boards." In fact, Section X(A)(1) of the *Page 13 
Commission's bylaws requires that each cooperating municipality and township shall contribute to the Commission in each calendar year dues based on the estimates of the population of that member for the previous year.
 {¶ 41} Further, the order and journal entry of the trial court dated September 2, 2003, stated, "[t]he Court is unpersuaded that participating members are not required to pay dues. If that were the case, the Commission would have no operating money." Therefore, the trial court noted as long as Kent was a member of the Commission, it must pay dues.
 {¶ 42} The ruling of the trial court in determining "[t]he Commission failed to prove that it was damaged by Kent's withdrawal and non-payment of dues or that it incurred any specific debt or obligation due to Kent's membership," is not consistent with the law, the bylaws, or the trial court's previous judgment entry. In rendering its decision, the trial court notes factors that are not applicable. For the above reasons, we determine that the trial court erred in overruling the magistrate's decision, dated September 2, 2005, relating to damages. Therefore, the Commission's second assignment of error has merit. Kent should be responsible for dues for 1999, and for calendar year 2003, due to the finding by the trier of fact that the notice given prior to those periods was unreasonable.
 {¶ 43} The Commission's third assignment of error states:
 {¶ 44} "The trial court abused its discretion to the prejudice of plaintiff-appellant in overruling plaintiff-appellant's first, second, and third objections to the magistrate's decision." *Page 14 
 {¶ 45} For purposes of clarity, the Commission made three objections to the magistrate's decision. First, the Commission objected to the trial court's previous decision that members of the Commission may withdraw from the Commission. Second, the Commission objected to the magistrate's determination that Kent is not currently a member of the Commission. Third, the Commission objected to the conclusion that Kent did not owe any monies for the years 2000, 2001, 2002, 2004, and 2005, and argued that Kent will continue to owe dues until the Commission is dissolved. The trial court overruled all of the above enumerated objections.
 {¶ 46} Since these issues have already been addressed, by recognizing the right to withdraw, this court does not find the trial court abused its discretion. Therefore, the Commission's third assignment of error is without merit.
 {¶ 47} For the foregoing reasons, the Commission's first and third assignments of error are not well taken. The Commission's second assignment of error has merit. The judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
 CYNTHIA WESTCOTT RICE, P.J., COLLEEN MARY OTOOLE, J., concur. *Page 1