[Cite as *State ex rel. Atkins v. Harrison Cty. Commrs.*, 2010-Ohio-3160.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, ex rel. | ) | |
| ANDREW ATKINS, HARRISON COUNTY | ) | |
| VETERANS SERVICE COMMISSION, | ) | CASE NO. 09-HA-7 |
| | ) | |
| RELATOR, | ) | OPINION |
| | ) | AND |
| VS. | ) | JUDGMENT ENTRY |
| | ) | |
| HARRISON COUNTY BOARD OF | ) | |
| COUNTY COMMISSIONERS, | ) | |
| | ) | |
| RESPONDENT. | ) | |

CHARACTER OF PROCEEDINGS:     Petition for Writ of Mandamus

JUDGMENT:     Petition for Writ of Mandamus
dismissed.

APPEARANCES:
For Relator     Attorney Michael Moses
330 South High Street
Columbus, Ohio 43215

For Respondent     Attorney Christopher Berhalter
Belmont County Prosecuting Attorney
147 W. Main Street
St. Clairsville, Ohio 43950

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: June 30, 2010

PER CURIAM:

{¶1} This original action comes before this Court on a complaint for a writ of mandamus filed by Relator Andrew Atkins (Atkins), seeking an order to compel Respondent Harrison County Board of County Commissioners (the Board) to release appropriated funds to the Harrison County Veterans Service Commission (the VSC). The Board timely answered the complaint, and subsequently filed a motion for summary judgment, requesting that this Court grant their motion and dismiss Relator's action.

{¶2} Among its statutory duties, the Board is charged with approving the budget and appropriating funds for the VSC. (Answer ¶3.) R.C. 5901.11 governs funding and budgetary procedures for a veterans service commission, providing:

{¶3} "On or before the last Monday in May in each year, the veterans service commission shall meet and determine in an itemized manner the probable amount necessary for the aid and financial assistance of persons entitled to such aid and assistance and for the operation of the veterans service office for the ensuing year. After determining the probable amount necessary for such purposes, the commission shall prepare and submit a budget in the manner specified in division (C) of section 5705.28 of the Revised Code to the board of county commissioners which may review the proposed budget and shall appropriate funds to the commission pursuant to Title III, section 5705.05, and sections 5705.38 to 5705.41 of the Revised Code. The board, at its June session, shall make the necessary levy, not to exceed five-tenths of a mill per dollar on the assessed value of the property of the county, to raise the amount that the board approves. The veterans service commission may, prior to the first day of October in any year, submit to the board of county commissioners a written request for a hearing before the board to discuss the commission's budget request for the ensuing fiscal year. Upon receiving this request, the board shall provide for such a hearing at a regular or special meeting of the board to be held no later than fourteen days prior to the board's adoption of a permanent appropriation measure under section 5705.38 of the Revised Code."

{¶4} On or about May 27, 2008, after estimating the necessary operating

expenses for the coming year, and determining the probable amount necessary for the aid and financial assistance of all eligible persons, the VSC submitted an itemized budget to the Board for the fiscal year 2009, requesting $101,596.00. (Amended Complaint ¶7.) The amount requested was within the five-tenths mill limitation set forth in the statute. (Answer ¶4.) Whereas past budgets included line-item requests for funds to cover burials, grave markers, and Memorial Day expenses, the 2009 budget proposal did not request any funds for these services. (Deposition Exhibits B & C; Answer Exhibit 1.) On or about June 18, 2008, the VSC sent written notice to the Harrison County Auditor, asking that he remove these three expenditures from the line items in the VSC's budget, asserting that such services were the financial responsibility of the Board's office. (Motion for Summary Judgment Exhibit 1.)

{¶5} The Board initially rejected the proposed 2009 budget for failing to include any amounts in the line items for burials, grave markers, and Memorial Day expenses. (Deposition of Harrison County Commissioner Barbara Pincola, Pg. 11, Lines 22-25; hereinafter Pincola Deposition.) Through subsequent informal meetings and discussions, the Board agreed with the VSC to remove the line items of the grave markers and Memorial Day expenses from the VSC's budget and to have them placed in the Board's budget. (Pincola Deposition Pg. 56, lines 14-19; Pg. 58, Lines 14-23; Pg. 66, Lines 17-25; Motion for Summary Judgment Exhibit 2.) As such, the only disputed line item remaining in the VSC's budget was for burials. The Board thus approved the VSC's budget for $101,600.00, the maximum allowed by statute. Id.

{¶6} During the budget negotiation process, the Office of the Prosecuting Attorney for Harrison County (the PA) issued two opinions purporting to clarify which governmental division was responsible for the contested expenses. (Amended Complaint, Appendix C.) The first opinion, dated September 19, 2008, asserted that all of the funding for indigent burials, grave markers, and Memorial Day expenses must come from the general fund and be separate from the VSC's budget. Id.

{¶7} The second opinion, dated February 4, 2009, sought to interpret Ohio

Attorney General's Opinion No. 2008-033, which was released on October 2, 2008. Id. The Attorney General's opinion addressed the same matter that was in dispute between the Board and the VSC, and seemingly reached a different conclusion than the first opinion from the PA. 2008 Ohio Atty.Gen.Ops. No. 2008-033. Pursuant to the Attorney General's opinion, the second PA opinion claimed that, while funding for grave markers and Memorial Day expenses were exclusively the province of the Board, funds for the burial of indigent veterans could be paid from the VSC's budget. (Amended Complaint, Appendix C.)

{¶8} Despite the inconsistent statutory interpretations and the VSC's apparent dissatisfaction with their budget as approved by the Board, the VSC never requested a hearing on the matter, as prescribed by R.C. 5901.11. See R.C. 5901.11, supra. (Answer ¶23.)

{¶9} On May 1, 2009, Atkins filed the initial complaint for writ of mandamus, which he subsequently amended. The complaint alleged that the Board withheld funds that were lawfully submitted and budgeted, and otherwise interfered with the VSC's discharge of its lawful duties. (Amended Complaint ¶¶15-19.) Atkins sought to compel the Board to authorize the release or transfer of appropriated funds for the fiscal year 2009 to the VSC. (Amended Complaint.)

{¶10} In its answer, the Board maintained that the initial rejection of the VSC's budget request was appropriate, as the Board is charged with ensuring that all budget proposals are lawful, and the VSC's initial request, as submitted, failed to meet all statutory requirements. (Answer ¶25.) Further, the answer asserts that the Board ultimately approved the VSC's budget in accordance with the maximum allowed by R.C. 5901.11, and that mandamus should not issue because the VSC had an adequate remedy in the form of a budget-review hearing, also provided for in the statute. (Answer ¶¶23-4.)

{¶11} On May 5, 2010, the Board filed a motion for summary judgment requesting that this court grant its motion, dismissing Atkins's mandamus action. On May 21, 2010, the VSC filed a memorandum in opposition to respondent's motion for

summary judgment, or in the alternative, cross-motion for summary judgment.

**{¶12}** As a preliminary matter, it should be noted that this court has the ability to hear an original mandamus action pursuant to Article IV, Section 3(B)(1) of the Ohio Constitution and R.C. 2731.02.

**{¶13}** To be entitled to summary judgment, respondent must demonstrate that: (1) no genuine issue of material fact exists; (2) respondent is entitled to judgment as a matter of law; and (3) even construing the evidence most strongly in favor of relator, reasonable minds could come to but one conclusion, and that conclusion is adverse to the relator. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. Respondent must be granted summary judgment when he has satisfied all three prongs of the standard in regard to at least one element of a mandamus claim. *State ex rel. DeVengencie v. Biviano*, 11th Dist. No. 2008-T-0070, 2010-Ohio-706, at ¶41. Furthermore, the non-moving party may not merely rest on its allegations. A properly supported motion for summary judgment forces the non-moving party to produce evidence on any issue for which it bears the burden of proof. *Drescher v. Burt* (1996), 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264.

**{¶14}** The requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief; (2) the respondent must have a clear legal duty to perform the requested act; and (3) the relator has no plain and adequate remedy at law. *State ex rel. Frease v. Wellington*, 7th Dist. No. 02-CA-54, 2002-Ohio-7455, at ¶4; *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 3, 591 N.E.2d 1186. However, in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus. *State ex rel. Lecklider v. School Emp. Retirement Sys.*, 104 Ohio St.3d 271, 2004-Ohio-6586, 819 N.E.2d 289, at ¶23.

**{¶15}** The Ohio Supreme Court has plainly articulated its reluctance to grant such measures, stressing that mandamus is an extraordinary remedy, which is to be

exercised with caution and only when the right is clear. It should not issue in doubtful cases. *State ex rel. Taylor v. Glasser* (1977), 50 Ohio St.2d 165, 166, 364 N.E.2d 1; see, also, *State ex rel. Pressley v. Industrial Commission of Ohio* (1967), 11 Ohio St.2d 141, 161, 228 N.E.2d 31 ("The facts submitted and the proof produced must be plain, clear and convincing before a court is justified in using the strong arm of the law by way of granting the writ."). Further, the writ is not demandable wholly as a matter of right. Id. at 161, 364 N.E.2d 1. Rather, the issuance of a writ of mandamus rests within the sound discretion of the court to which application for the writ is made, and depends upon the facts and circumstances of the case, including the relator's rights, the relator's conduct, the equity and justice of the relator's case, and public policy. Id. at 161, 364 N.E.2d 1.

{¶16} As acknowledged by both parties, the Ohio Supreme Court's decision in *Lynch v. Gallia County Board of Commissioners* (1997), 79 Ohio St.3d 251, 680 N.E.2d 1222, is controlling in the present matter. In *Lynch*, as here, a county veterans service commission sought a writ of mandamus to compel the board of county commissioners to appropriate requested funds for the VSC's budget. Id. at 253, 680 N.E.2d 1222. Upon reviewing R.C. 5901.11 (which, at that time, had recently been amended to its current version), the court held that the statute "imposes a mandatory duty upon the board of county commissioners to fund a lawful budget request of a veterans service commission up to the five-tenths mill limitation set forth in the statute." Id. at 253, 680 N.E.2d 1222. Thus, the court determined that the General Assembly unambiguously defined a clear legal right vested in a veterans service commission to have a lawful budget approved, and a corresponding duty incumbent upon a board of commissioners to provide the necessary funding. Id. at 253, 257-258, 680 N.E.2d 1222.

{¶17} In distinguishing the statute from its prior version, the court emphasized that, in the amended version, the state legislature omitted language that previously granted a board of county commissioners the ability to revise a VSC's proposed budget. Id. at 254, 680 N.E.2d 1222. Citing the unique status occupied by veterans

service commissions, the court found that the General Assembly intended for VSCs to have authority over their budgets, without discretionary oversight by the boards of county commissioners. Id. at 257-8, 680 N.E.2d 1222. Moreover, a legislative amendment must be presumed to change the effect and operation of the law. Id. at 257-8, 680 N.E.2d 1222, citing *Leader v. Glander* (1948), 149 Ohio St. 1, 5, 77 N.E.2d 71. As such, the court pronounced that, in light of the amendment, a board of commissioners now had a very limited function in approving a VSC's budget – the Board could *review* a budget to ensure that it conformed to statutory requirements, but it could not unilaterally *revise* a lawful budget. *Lynch* at 257, 680 N.E.2d 1222.

{¶18} In the present action, the VSC claims that the Board's initial rejection of its proposed budget, and the Board's insistence on including certain line items in the VSC's budget, constituted an impermissible attempt to revise the VSC's budget. The Board maintains that, in reviewing the VSC's budget, it determined that the VSC's failure to include funding for indigent burials rendered the proposed budget unlawful, and so rejecting the budget was appropriate. This point of contention seems to stem, at least in part, from the conflicting opinions issued by the PA. The VSC wishes to rely on the first opinion, which declared that burials, grave markers, and Memorial Day expenses should all be paid from the county general fund, and not specifically from the VSC's budget. However, the PA clearly modified its position subsequent to the Attorney General issuing her own opinion on the matter. In reviewing R.C. 5901.11 in the context of the larger statutory scheme laid out in R.C. Chapter 5901, the Attorney General stated, "although the longstanding practice of using VSC moneys for burial assistance is not compelled by R.C. 5901.32, we find that it is permitted under R.C. 5901.32." 2008 Ohio Atty.Gen.Ops. No. 2008-033 at 11. The PA's opinion echoed this conclusion, stating that the Board must pay for grave markers and Memorial Day expenses, but burial expenses could come from the VSC's budget. Consequently, the Board conceded that it could not compel the VSC to include line items for grave markers and Memorial Day expenses, and approved the VSC's budget in full. The VSC, however, seems to contend that, because none

of these interpretations of R.C. Chapter 5901 *mandates* that burial funding come from the VSC's budget, the Board cannot make approval of the VSC's budget contingent on its inclusion as a line item.

{¶19} In *Lynch*, however, the Ohio Supreme Court seemed to take a more definitive stance on whether burials should be included in the VSC's budget. *Lynch* at 256, 680 N.E.2d 1222. In assessing the comprehensive statutory scheme, the court held that "R.C. 5901.25 through 5901.32 are mandatory provisions directing the veterans service commission to assist in the burial of indigent veterans. *A lawful commission budget must include funding for this activity.*" (Emphasis added.) Id. at 257, 680 N.E.2d 1222. The *Lynch* court further acknowledged that veterans service commissions are endowed with a "special public trust to see that those who have served our country receive a decent burial and are remembered with honor, and that they and their families are kept from indigency." Id. at 258, 680 N.E.2d 1222. The Attorney General's opinion, however, offers a less conclusive reading of *Lynch*, positing that the reference to "this activity" is too ambiguous to provide a definitive resolution. 2008 Ohio Atty.Gen.Ops. No. 2008-033 at 10. Ohio Attorney General Opinions, while perhaps useful as guidance, lack any precedential value and do not bind the courts of Ohio as controlling authorities. *Gen. Dynamics Land Sys., Inc. v. Tracy* (1998), 83 Ohio St.3d 500, 504, 700 N.E.2d 1242. As such, it is the opinion of this court that the Ohio Supreme Court appreciated the gravity of the duty delegated to the VSC and that the plain language of its opinion, read in its entirety, dictates that responsibility for indigent burials – financial and otherwise – rests solely with the VSC.

{¶20} Consequently, while R.C. 5901.11 imposes a clear legal duty on the Board to fund the VSC's lawful budget requests, the Board did not exceed its authority by requiring the VSC to fund burials from its own budget. R.C. Chapter 5901 and the Ohio Supreme Court's decision in *Lynch* mandate that funding for such activity be included in the VSC's budget, so it was reasonable and appropriate for the Board to insist on placing the line item for burials in the VSC's budget. Otherwise,

the budget as submitted should rightfully have been rejected as unlawful. And if a budget request is unlawful, there is no legal right and corresponding duty to satisfy a request for a writ of mandamus.

**{¶21}** Further, in previous years, the VSC's budget had included funding requests and approvals for not only burials, but grave markers and Memorial Day expenses as well. It is clear, even applying the less stringent position of the Attorney General, that it was not unreasonable for the Board to assert that burial expenses were the responsibility of the VSC. Moreover, at no time did the Board ever promise to the VSC a lesser amount than the full five-tenths mill limitation set forth in the statute. The Board merely stipulated that $1,500.00 of the total $106,000.00 must be used by the VSC to fund indigent burials, pursuant to R.C. Chapter 5901.

**{¶22}** The veterans service commission's request for mandamus further fails because the VSC had a plain and adequate remedy in the course of law. The VSC had a statutory right under 5901.11 to request a formal hearing before the Board to discuss the VSC's budget proposal. At no time did the VSC choose to exercise that right. The VSC, however, asserts that a hearing before the Board is wholly inadequate as a remedy. The commission claims that holding a hearing to discuss an issue, when "ample discussion had already occurred" on that issue, does not afford the VSC a remedy that is complete, beneficial, and speedy, as the law requires. *State ex rel. Mace*, 7th Dist. No. 09 MA 153, 2010-Ohio-611, at ¶3, citing *State ex rel. Smith v. Cuyahoga Cty. Court of Common Pleas*, 106 Ohio St.3d 151, 2005-Ohio-4103, 832 N.E.2d 1206, at ¶19. We disagree.

**{¶23}** An appeal, including an administrative appeal, is considered an adequate remedy that precludes mandamus. *State ex rel. Kronenberger-Fodor Co. v. Parma* (1973), 34 Ohio St.2d 222, 297 N.E.2d 525, syllabus. Thus, the failure to pursue an adequate administrative remedy bars mandamus relief. *State ex rel. Buckley v. Indus. Comm.*, 100 Ohio St.3d 68, 2003-Ohio-5072, 796 N.E.2d 522, at ¶13, citing *State ex rel. Reeves v. Indus. Comm.* (1990), 53 Ohio St.3d 212, 213, 559 N.E.2d 1311. "[It is] the long settled rule of judicial administration that no one is

entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (Citation omitted.) *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 462, 674 N.E.2d 1388.

**{¶24}** The exhaustion of administrative remedies doctrine is a well-established principle of Ohio law. The purpose of the doctrine is to "prevent[ ] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, as well as to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi* (1975), 422 U.S. 749, 765, 95 S.Ct. 2457. As the *Lynch* court instructed, "[s]hould the board of county commissioners' review uncover an unlawful budget request, the hearing procedure prescribed by the statute offers the veterans service commission an opportunity to seek reconsideration of the board's determination, before resorting to a lawsuit." *Lynch* at 257, 680 N.E.2d 1222. In *Lynch*, the court issued the writ only after the VSC had exhausted its remedies by participating in a budget hearing, and then proceeding through the appellate process.

**{¶25}** Here, it is undisputed that the VSC had an alternative remedy prescribed by statute and failed to request a hearing. In its defense, the VSC seems to contend that such a hearing would be redundant, as ongoing informal discussions had not yielded a resolution. However, as the foregoing precedent amply demonstrates, if a statute provides an administrative remedy, the aggrieved party is obligated to preserve its rights through the process outlined in the statute before seeking recourse as extreme as mandamus. Mandamus will not issue simply because the VSC anticipates an adverse disposition.

**{¶26}** In addition, contrary to the VSC's position, the hearing would offer complete, beneficial, and speedy relief. Such a remedy would provide a final, formal decision on the matter, which would aid in compiling a record sufficient for judicial review, should further action be necessary. While the presence of such a record would have certainly been beneficial for instituting future claims, both parties could

have additionally benefited from the opportunity to clarify clerical discrepancies that seemed to persist throughout the negotiations.  Further, R.C. 5901.11 provides that the hearing be conducted in a timely fashion.  The VSC had the ability to be heard prior to the board's adoption of any permanent appropriation measure.

**{¶27}** For these reasons, the VSC cannot satisfy the third requisite for a writ of mandamus.

**{¶28}** Based on the pleadings and evidence before this court, we find that Respondent is entitled to summary judgment.  The writ of mandamus sought by Relator is hereby denied.

**{¶29}** Costs taxed against Relator.  Final order.  Clerk to serve notice as provided by the Civil Rules.

Donofrio, J. concurs.

Vukovich, P.J. concurs.

Waite, J. concurs.